PETER J. SCHAPS *et al. vs.* JOSEPH LEHNER.   SAME *vs.* JOHN G.
KULZER.   SAME *vs.* MARY DIEDERICH.

Submitted on briefs June 22, 1893.   Affirmed July 14, 1893.

**Insanity of a Party to a Contract.**

> Evidence *held* to justify the findings.  The mere fact that one of the
> parties to a contract was insane (he not having been so adjudged by judi-
> cial proceedings) does not render the contract void, but at most only void-
> able, and constitutes no ground for setting it aside where the other party
> had no notice of the insanity, and derived no inequitable advantage from
> it, and where the parties cannot be placed *in statu quo.*

Appeal by plaintiffs, Peter J. Schaps and Theresia, his wife, from
three several judgments of the District Court of Stearns County, *D.
B. Searle,* J., entered August 18, 1892.

In the spring of 1888 the plaintiff, Peter J. Schaps, owned an old
flouring mill at Albany in Stearns County.   He was insane, and at
the Hospital in St. Peter.   His wife agreed orally with the defend-
ant, Joseph Lehner, that he should advance part of the money to
procure new machinery and repair the mill, and have a deed for one
undivided eighth of it.   She made a like oral agreement with John
G. Kulzer that he should also advance money and have a deed for
another eighth.   She made still another like oral agreement with
Mary Diederich that she should advance as much money as both the
others and have a deed of one undivided fourth of the property.
They advanced in all $3,950, and the mill was equipped and set run-
ning.   After the husband was discharged from the Hospital, he
and wife on June 25, 1889, conveyed to Lehner one undivided eighth,
and to Kulzer another eighth, and to Mary Diederich a fourth of the
mill property, each by a separate deed.   In April, 1890, Schaps and
wife brought these three several actions, one against each grantee,
to set aside and avoid these deeds.   The trial court gave them
judgment in each action, in substance that the defendant therein
reconvey to Schaps on being repaid the amount that his or her ad-
vances had increased the market value of the mill property.   The
court found the property was increased in value $3,000, and in the
action against Lehner directed judgment that if plaintiffs paid him
$750 in sixty days he should reconvey; if they did not, then that his

deed stand affirmed, in full force and effect, and operate to convey one undivided eighth of the property. In the action against Kulzer a like judgment was ordered. In Mary Diederich's case, she was to be paid $1,500, and, if not paid in sixty days, her deed was to stand and operate to convey to her an undivided fourth. Judgments were so entered and plaintiffs brought these three several appeals.

*N. H. Miner,* for appellants.

These improvements and additions to the mill were made while Peter J. Schaps was confined in the hospital. The defendants had actual knowledge of his mental condition. The improvements were made pursuant to an agreement with Mrs. Schaps, who had no authority to bind her husband, the owner of the property. Schaps is not a voluntary recipient or retainer of the benefits of the transaction, supposing he had been sane. For both these reasons this case does not come within the equity of the rule requiring a restoration of the consideration, as a condition of vacating the deed. *Brigham* v. *Fayerweather,* 144 Mass. 48; *Sabledowsky* v. *Arbuckle,* 50 Minn. 475.

*Bruckart & Brower,* for respondent in each action.

With respect to executed contracts, the tendency of modern decisions is, to hold the insane person liable in cases where the transaction is in the ordinary course of business, is fair and reasonable, and the mental condition was not known to the other party, and the party cannot be put *in statu quo. Behrens* v. *McKenzie,* 23 Iowa, 333; *Northwestern Mutual Fire Ins. Co.* v. *Blankenship,* 94 Ind. 535; *Eaton* v. *Eaton,* 37 N. J. Law, 108; *Fay* v. *Burditt,* 81 Ind. 433; *Young* v. *Stevens,* 48 N. H. 133; *Gribben* v. *Maxwell,* 34 Kan. 8; *Lancaster Co. Nat. Bank* v. *Moore,* 78 Pa. St. 407; *Molton* v. *Camroux,* 2 Exch. 486; *Campbell* v. *Hooper,* 3 S. & G. 153; *Dane* v. *Kirkwall,* 8 C. & P. 679.

Although in some cases a man may now, notwithstanding the old common law maxim to the contrary *(Berkley's Case,* 2 Coke's R. 578, pt. 4, 133b), be admitted to stultify himself, yet he cannot do so to the prejudice of others, for he thus makes his own misfortune an

excuse for fraud, and against that the doctrine of the maxim stands unaffected by any exception. *Mutual Life Ins. Co.* v. *Hunt*, 79 N. Y. 541.

The respondents made valuable improvements in and about the mill, at an outlay of nearly $4,000. They acted in good faith; were actuated by no improper motives; received the deeds without knowledge of Schaps' mental condition. They, with Schaps, continued a long time thereafter to operate the mill as copartners. To set aside the deeds is to give Schaps the valuable improvements without compensation to the defendants. This would be inequitable.

MITCHELL, J. These actions were brought to set aside certain conveyances, which it was alleged that the defendants had severally obtained from the plaintiff without consideration, by fraud and duress, while he was insane, and incapable of transacting business. It appears the plaintiff was the owner of a flouring mill, which required to be repaired or "rebuilt." In the spring of 1888 he was committed to the hospital for the insane at St. Peter, presumably under the provisions of 1878 G. S. ch. 35, § 21; and about the same time his wife was appointed guardian of his estate, presumably under the provisions of 1878 G. S. ch. 59, § 8. While he was confined at St. Peter, and his estate under guardianship, his wife verbally agreed with the defendants that if they would proceed and expend the money necessary to make the needed improvements in the mill they should have conveyances of an undivided half of the property. In pursuance of this arrangement they made the proposed improvements at a cash outlay of $3,950, besides their own labor for several months, thereby increasing the value of the property, as the court finds, $3,000. On May 8, 1889, plaintiff was legally discharged from the hospital at St. Peter, and on the 19th of June following the probate court discharged the guardian of his estate. On June 25th, the plaintiff, in pursuance and in execution of the verbal agreement made by his wife with defendants, executed the conveyances which it is here sought to set aside. The issues of fact were tried partly by a jury and partly by the court. The findings are to the effect that at the time plaintiff signed the deeds he was "of unsound mind, and incapable of making said deeds and of transacting business of that impor-

tance," but that the deeds were not obtained by fraud, duress, or by taking undue advantage of plaintiff, but that the defendants made the improvements in the mill in good faith, and received the deeds without knowledge of the fact that plaintiff was insane, and incapable of transacting business of that character. The judgment ordered was that upon payment by plaintiff to defendants of $3,000, the amount to which the improvements had enhanced the value of the property, within sixty days, the deeds should be set aside and canceled; otherwise to stand affirmed and in full force and effect.

Plaintiff's assignments of error all go to the point either that certain findings of fact were not justified by the evidence, or that the conclusions of law were not supported by the findings. The principal finding complained of is the one to the effect that when the defendants obtained the deeds they had no knowledge of the fact that plaintiff was then insane, and incapable of transacting business of that nature. We have searched the record in vain for evidence that defendants had any such knowledge, and the burden of proof was on the plaintiff who assailed the deeds. It does appear that they knew that the plaintiff had been committed to the hospital for treatment, but this was no evidence of mental incapacity to make contracts. *Knox* v. *Haug*, 48 Minn. 58, (50 N. W. Rep. 934). And, even if they knew that he was incapable of making contracts during the time he was in the hospital, it does not follow that they knew that this incapacity continued after he was discharged, and his estate discharged from guardianship. As to the point that the deeds were without consideration, it is enough to say that, while the contract assumed to be made by the wife with the defendants was originally void, both under the statute of frauds and also because not within the scope of her authority, yet, if the husband subsequently ratified it by executing the deeds, the improvements made on the property constituted a good and adequate consideration. Some point is made as to a discrepancy between the findings of fact and the admission of the answers regarding the value of the property before and after the improvements were made; but the material question was not the value of the property at these dates, but how much had defendants' ex-

penditures increased its value; and upon that question the evidence amply justified the finding.

A point is made that the order discharging the guardian of plaintiff's estate was absolutely void, because made without a hearing. The use sought to be made of this is that the deed of an insane person, while under guardianship, is not merely voidable, but absolutely void. But there is no assignment of error that raises this point, and, even if there was, we find nothing in the record to support it. The complaints alleged that the discharge of the guardian was procured by fraud, but the court made no finding on the subject, and none was asked for. Therefore, upon the findings, which are supported by the evidence, the case stands thus: The deeds were obtained by the defendants in good faith for a full and adequate consideration, without knowledge of plaintiff's insanity, and when he was neither under guardianship nor found a lunatic by any judicial proceedings then in force. The general rule, both in equity and at law, is that the mere fact that one of the parties to a contract is insane (he not having been found to be a lunatic by judicial proceedings) does not render the contract void, but at most only voidable, and is no ground for setting it aside where the other party had no notice of the insanity, and derived no inequitable advantage from it, and where the parties cannot be placed *in statu quo*. As defendants do not complain of the judgment, it is not necessary to consider whether plaintiff made a case for the rescission of these deeds, even upon the condition of partial restitution; but the plaintiff has certainly no ground for complaint that the court required, as a condition to their cancellation, restitution to the amount to which defendants' expenditures had actually enhanced the value of the property.

Judgment affirmed.

(Opinion published 55 N. W. Rep. 911.)