## WILLIAM J. YOUN *vs.* WILLIAM H. LAMONT.

Argued Dec. 21, 1893. Affirmed Jan. 15, 1894.

No. 8417.

**Burden of proof of unsound mind is on him who alleges it.**

Where a mortgage conveyance of real estate, and a title acquired by foreclosure proceedings thereunder, are sought to be impeached and declared void, by a subsequent purchaser from the mortgagor, upon the ground of unsound mind of the mortgagor at the time of the execution of the mortgage, caused by the habitual use of intoxicating liquor to such an extent as to destroy his reasoning faculties, the burden of proving such unsoundness of mind is upon the plaintiff, and which he must also affirmatively show existed at the time of the execution of the mortgage.

**When and for what cause a lunatic's deed will be set aside.**

In such a case it must also appear affirmatively that the transaction was fraudulent, or that undue advantage was taken of the intoxicated vendor,

or that such intoxication was produced or procured by the other party, or that he had notice of the vendor's intoxicated condition at the time of the execution of the mortgage. *Held,* that the evidence justified the ruling of the court below, and its order denying plaintiff's motion for a new trial is affirmed.

Appeal by plaintiff, William J. Youn, from an order of the District Court of Le Sueur County, *Francis Cadwell,* J., made July 24, 1893, denying his motion for a new trial.

Ejectment for eighty acres of land in the possession of defendant, William H. Lamont. It was admitted that in 1888, John Lamont owned the land. He deeded it to Herbert Lamont on April 7, 1891, and Herbert deeded it to plaintiff on February 27, 1892. But John Lamont mortgaged it September 11, 1888, to Edward F. Quackenbush for $872. Quackenbush assigned the mortgage on February 1, 1889, to Emma F. Gillette. She foreclosed under a power of sale in the mortgage and bid in the land on March 15, 1890, for $1,086.25 and received the Sheriff's certificate of sale. It was not redeemed and she deeded the land on March 28, 1891, to defendant. All these instruments were duly recorded. The plaintiff claimed that John Lamont when he gave the mortgage was an habitual drunkard and under guardianship and *non compos mentis,* and that the mortgage was for that reason invalid and defendant's paper title void.

After the evidence was all given the defendant moved the Court to direct the jury to return a verdict for him. The motion was granted, plaintiff excepted, the verdict was entered and plaintiff moved for a new trial. The motion was denied and he appeals.

*Merrick & Merrick* and *H. H. Merrick,* for appellant.

John Lamont was adjudged by a Court of competent jurisdiction to be mentally incapacitated and incapable of managing his own affairs. He was under this disability when the Quackenbush mortgage was made and executed. 1878 G. S. ch. 59, §§ 8 to 11 incl.

These guardianship proceedings were not only competent and material, but if admitted, would have made a *prima facie* case for plaintiff as to the mental incapacity of John Lamont. The claim, that because they were not recorded they could not be introduced in evidence, is erroneous. These proceedings would still be evidence, although perhaps not absolutely conclusive. *Knox* v. *Haug,* 48 Minn.

58; *McGinnis* v. *Commonwealth*, 74 Pa. St. 245; *Rogers* v. *Walker*, 6 Pa. St. 371; *White* v. *Palmer*, 4 Mass. 146; *Van Deusen* v. *Sweet*, 51 N. Y. 378; *L'Amoureux* v. *Crosby*, 2 Paige 422; *Osterhout* v. *Shoemaker*, 3 Hill 513.

The Probate Court, after having adjudged Lamont an habitual drunkard and incapable of managing his own affairs, appointed a guardian for him. This was conclusive respecting the disability of the ward. *Wadsworth* v. *Sherman*, 14 Barb. 169; *Leonard* v. *Leonard*, 14 Pick. 280; *White* v. *Palmer*, 4 Mass. 146; *Blanchard* v. *Wild*, 1 Mass. 342.

*Thomas Hessian* and *M. R. Everett*, for respondent.

The only question in the case arises on the ruling of the trial Court in excluding the testimony offered by the plaintiff, for the purpose of showing the mortgage from Lamont to Quackenbush to be invalid. The testimony was inadmissible for the purpose offered. A drunkard is not incompetent, like an idiot or one generally insane. He is simply incompetent on proof that at the time of the act his understanding was clouded, or his reason dethroned by actual intoxication. It was admitted that John Lamont was not intoxicated when he made the mortgage. *Peck* v. *Cary*, 27 N. Y. 9; *Gardner* v. *Gardner*, 22 Wend. 526; *Van Wyck* v. *Brasher*, 81 N. Y. 260; *Wright* v. *Fisher*, 65 Mich. 275; *Trimbo* v. *Trimbo*, 47 Minn. 389.

BUCK, J. This is an action of ejectment, and, of course, the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of the title of the defendant.

It appears that on the 10th day of September, 1888, one John Lamont was the owner in fee of the South half of the northeast quarter of section twenty four, Township 109, Range 23, in Le Sueur county, in this state. That on the 11th day of September, 1888, he executed a mortgage to one Edward Quackenbush to secure the payment of the sum of $872, which mortgage was subsequently assigned to one Emma F. Gillette, who, after foreclosing the same, and after the expiration of the time for redemption, conveyed the premises to the defendant, William H. Lamont. On the 7th day of April, 1891, said John Lamont executed a quitclaim deed, which in form and terms

conveyed said premises to one Herbert Lamont; and on the 27th day of February, 1892, said Herbert Lamont in the same manner executed a deed to the plaintiff in this action. It will be thus seen that both parties claim title from the same source, viz. John Lamont.

The plaintiff, however, claims that at the time of execution of the mortgage by John Lamont to Edward F. Quackenbush it was void, upon the ground that said John Lamont was incapable of making the same, and was then under the influence of liquor, so as to be incapable of making the same; and upon the further ground that the said John Lamont was at the time of the execution of said mortgage under guardianship, and for that reason incompetent to make a valid contract. To prove the latter fact, the plaintiff, on the trial, offered to show that on the 6th day of July, 1886, a petition was made to the probate court of Le Sueur county for the appointment of a guardian of said John Lamont, for the reason that he was then an habitual drunkard, spendthrift, and waster of his property; that such petition was filed, an order for hearing made and served upon Lamont, a hearing had, where testimony was taken; and that upon such testimony a guardian was appointed, qualified, and entered upon the discharge of his duties, and continued in charge of said Lamont's property up to February 6, 1889, when said guardian was discharged, said Lamont having then "recovered." Upon plaintiff making this offer, the following transactions appear of record: "By the Court: Do you propose to show that at the time of the execution of the mortgage from John Lamont to Edward F. Quackenbush the understanding of John Lamont was clouded, or his reason dethroned, by actual intoxication? Do you propose to show that the complaint and the petition and order upon which John Lamont was placed under guardianship was recorded with the register of deeds? Answer of Plaintiff's Attorney: I do not." The offer was objected to by defendant as incompetent, irrelevant, and immaterial, and because it did not include an offer to show that John Lamont was in such condition at the time of the execution of the mortgage as to be incapable of transacting business. The court sustained the objection, and plaintiff excepted. The defendant had previously objected to substantially the same offer upon the ground that there was no such record of any such proceeding in the office of the register of deeds, which objection was sustained by the court, and

plaintiff excepted. If the plaintiff could not and did not offer to prove that John Lamont, at the time of his execution of the mortgage to Quackenbush, was incapacitated to execute it, and did not propose to show that the petition, notice of hearing served on Lamont, and proof of service thereof on him were filed in the office of the register of deeds as required by 1878 G. S. ch. 59, § 11, then the court below was justified in its ruling, and its instruction to the jury to return a verdict for the defendant was correct. This is especially so in view of the fact that there is no allegation in the pleadings, and no proof or offer to show, that Quackenbush was aware of the alleged incapacity of John Lamont at the time of the execution of the mortgage or at any other time; nor is there any claim made that John Lamont did not get the full value for his mortgage, or that there was any fraud practiced upon him in the transaction whatever.

Not only this, but plaintiff claimed, as appears by the record, that John Lamont recovered from his incapacity February 6, 1889, at which time it is alleged his guardian was discharged. From this time, then, it is presumed that John Lamont was of sound mind, and temperate, for the presumption is stronger that a person is sane and temperate than that he is insane or intemperate. We have, then, a period from February 6, 1889, to April 7, 1891,—of more than two years,—while John Lamont was sane, and during which time he does not appear to have made any effort to have his mortgage to Quackenbush, and the foreclosure thereunder, canceled or set aside upon any ground whatever, nor take any steps to warn any innocent purchaser that he had any interest in the premises. Nor did he notify defendant that he made any claim to the premises, or that he did not receive the consideration from Quackenbush mentioned in the mortgage, but suffered defendant to remain in possession, and cultivate the same, from the time of defendant's purchase, March 28, 1891. Nor does there appear to have been any offer to return or restore the consideration which John Lamont received on the execution of the mortgage. While the consideration of this fact may not be necessary for the decision of this case, it shows strong equity against the plaintiff's claim. We think that the record shows that the seisin had been conveyed to the defendant, and that there is not enough evidence, and would not have been sufficient evidence, if

plaintiff had proven all that he offered, to have made the deed void. Conveyances are not now set aside upon the sole ground that the grantor is a lunatic, idiot, or *non compos mentis.* Persons dealing with this class of persons, knowing them to be so, are deemed to have perpetrated a fraud, and in such cases courts of equity can interfere, and set aside contracts made by them. Story, Eq. Jur. § 227. But Mr. Story lays down the rule further: "That if a purchase is made in good faith, without any knowledge of the incapacity, and no advantage has been taken of the party, courts of equity will not interfere to set aside the contract if injustice will thereby be done to the other side, and the parties cannot be placed in *statu quo.*" Section 228. See *Schaps* v. *Lehner*, 54 Minn. 208. (55 N. W. 911.) In Buswell on Insanity (section 413) the rule is laid down that "a completed contract for the sale of lands made by an insane vendor without fraud, or notice to the vendee of the grantor's insanity, and for a fair consideration, will not be set aside, either at law or in equity, in favor of the vendor or his representatives, except the purchase money be restored, and the parties fully reinstated in the condition in which they were prior to the purchase." In *Lancaster Co. Nat. Bank* v. *Moore*, 78 Pa. St. 407, the bank discounted a note for a lunatic, and he was held liable, and Paxson, J., said: "It would be an unreasonable and unjust rule that such persons should be allowed to obtain the property of innocent parties, and retain both the property and its price." There are numerous authorities in this country to the same effect. The defendant was not bound to prove the sanity or capacity of his immediate grantor, nor that of his predecessors. The burden of proving any such incapacity, if any existed, rested upon the plaintiff. Courts of equity guard with jealous care all contracts or transactions made with persons of unsound mind, but its strong arm is not used as a sword against the innocent, but as a shield for the unfortunate ones. But this protection, however, does not go to the length of allowing intoxicated people to acquire property, and build up fortunes for themselves, upon drunken incapacity alone. It must appear that there was fraud or undue advantage taken of the intoxicated vendor, or that such intoxication was produced or procured by the other party, or that he had notice of his condition. Innocent purchasers for full value should be protected, or else the title to our lands will become pre-

carious, especially if unsoundness of mind in remote grantors can be permitted to upset and invalidate such conveyances.

The order denying a motion for a new trial is affirmed.

(Opinion published 57 N. W. Rep. 478.)