H. C. SCOTT v. S. M. HAY and Others.[1]

October 23, 1903.

Nos. 13,462—(167).[2]

**Release of Mortgage—Construction.**

The established rule that a written instrument is to be construed as a whole, giving to every part essential force, in order to reconcile ambiguous or contradictory statements, applied, and *held* that a declaration in the release of a mortgage that it is fully paid is controlled and modified by other statements which show it to be a satisfaction only of the specific tracts named therein.

**Testimony of Physician.**

The rule that witnesses required to testify to the mental capacity of a person whose sanity is questioned must first state the facts within their observation, upon which they rest their conclusion, *held* to apply to family physicians who have treated a patient generally for other complaints than his alleged infirmity.

**Insanity of Party to Agreement.**

The fact that one of the parties to an agreement for the transfer of lands was insane does not render his acts absolutely void, but at most only voidable, and constitutes no ground for setting them aside when the other party had no notice of the insanity, and derived no inequitable advantage therefrom.

**Evidence—Good Faith.**

Evidence considered, and *held* reasonably to support the good faith of a mortgage lien, as well as subsequent transfers of interests in pine lands to purchasers thereof, and that a quitclaim deed from the alienor to the plaintiff was not made in good faith, but charged the alienee, who held under such quitclaim, with full notice of the rights of defendants.

**Decision Sustained by Findings.**

*Held*, further, upon the findings of fact by the trial court, that the conclusions of law based thereon are sustained.

Appeal by plaintiff from an order of the district court for St. Louis county, Cant, J., denying a motion for a new trial. Affirmed.

[1]Reported in 97 N. W. 106.    [2] April, 1903, term.

*Austin N. McGindley,* for appellant.
*Mitchell & Reynolds,* for respondent Hay.
*Davis, Hollister & Wilson,* for respondent Knox Lumber Company.
*Mahon & Agatin,* for respondent Bell.

It is claimed the deeds from Hay to Bell were not operative to convey anything because the sheriff's certificate of foreclosure of Hay's mortgage was not recorded within twenty days after the sale and not until after the recording of plaintiff's deed. Section 6065, G. S. 1894, provides that the provisions of section 6038 shall apply to proceedings in foreclosure of mortgages by action. The latter section reads that the sheriff's certificate shall be recorded within twenty days after the foreclosure sale. That this requirement is directory, not mandatory, is shown by: (a) The history of our statutory enactments; (b) the analogy between foreclosure sales and execution sales; (c) a consideration of the purpose of the provision; and (d) the fact that this sale was made in a foreclosure by action and not by advertisement.

A. By Pub. S. 1849–1858, c. 83, § 64, a sale in foreclosure by action was to be made by a master and a deed given by him. By Laws 1862, c. 19, § 3, after a sale of real estate upon execution or order of court (except when otherwise specified), the officer or person making the sale was to make and deliver to the purchaser a certificate of the character specified in the act. If not recorded within twenty days after the sale such certificate was to be void, but the purchaser could obtain another certificate. Any certificate was to become void if not recorded within twenty days. This act of 1862 was expressly repealed by G. S. 1866, and chapter 81, § 11, took the place of the provision quoted. See Crombie v. Little, 47 Minn. 581.

B. In execution sales G. S. 1894, § 5470, requires a sheriff's certificate to be executed and recorded as required by law for the conveyance of real estate and such certificate is prima facie evidence of the facts therein stated. Under statutes requiring a sheriff's certificate of sale of real estate on execution, it has been repeatedly held such statutes were directory only, and the sale is not invalidated by an omission to procure a certificate. Barnes v. Kerlinger, 7 Minn. 55 (82); Jackson v. Young, 5 Cow. 269; Hambrick v. New England,

100 Ala. 551; Pingree, Mortg. § 1976; Johnson v. Day, 2 N. Dak. 295; Houghton v. Bartholomew, 10 Metc. (Mass.) 138.

C. In regard to the purpose of our statutory provision requiring record within twenty days, the requirement can be only mandatory when the rights of subsequent good faith purchasers or incumbrancers are involved. Freeman, Exn. § 312; Barnes v. Kerlinger, supra; Houghton v. Bartholomew, supra.

D. Reasons for regarding the statutory provisions mandatory in cases of foreclosure by advertisement do not apply to cases of foreclosure by action. The court's order confirming the sale has the effect of a judgment and until set aside cannot be attacked collaterally. Hotchkiss v. Cutting, 14 Minn. 408 (537); Smith v. Valentine, 19 Minn. 393 (452); Coles v. Yorks, 28 Minn. 464. The defendants' year for redemption begins to run from the date of the order confirming the sale. G. S. 1894, § 6064. There is no time limited within which the order of confirmation must be entered. If the statutory requirement be mandatory, in cases of foreclosure by action, then the purchaser would be required to do that which would be useless, in case the sale were not confirmed. Apparently the only effect of failure to record the certificate upon the rights of parties to the action and of persons not bona fide purchasers or incumbrancers would be to delay the time from which the year of redemption is to be reckoned. See Crombie v. Little, supra; Taylor v. Gladwin, 40 Mich. 232; Perkins. v. Keller, 43 Mich. 53.

LOVELY, J.

This is an action to determine adverse claims to several thousand acres of pine lands in St. Louis county, to which plaintiff asserts title under a quitclaim deed from Parlan Semple, of Oshkosh, Wisconsin. The interest of each defendant is set forth in their separate answers, and, upon issues tendered in reply, were tried to the court, who made extended findings substantially in favor of each defendant, upon which judgment was directed establishing their respective rights. Plaintiff, upon a settled case containing the entire proceedings, moved to set aside the order for judgment, and for a new trial, because the conclusions of fact were not justified by the evidence, and for errors occurring at the trial, which was denied. This appeal is from that order.

The result of the court's conclusions in application to each of the three defendants practically constitutes an entire and distinct controversy. The record is very voluminous, extending through twelve hundred pages of printed matter, upon which one hundred fifty-seven assignments of error are predicated. Many of them, however, are not discussed, and, upon the well-settled rule we have adopted, they are not entitled to specific attention on this review. Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Firemen's Ins. Co., 62 Minn. 315, 64 N. W. 902; Cook v. Kittson, 68 Minn. 474, 71 N. W. 670; Keigher v. City of St. Paul, 73 Minn. 21, 75 N. W. 732; State v. Hulder, 78 Minn. 524, 81 N. W. 532; Dennis v. Pabst Brewing Co., 80 Minn. 15, 82 N. W. 978; Hahn v. Bettingen, 81 Minn. 91, 83 N. W. 467; Potts v. St. Paul A. P. Assn., 84 Minn. 217, 87 N. W. 604. But every material question bearing upon the subjects of inquiry before the trial court has been attentively examined and thoroughly considered.

For an understanding of the essential facts which are in dispute, or embraced in the findings of the trial court, we may summarize that Parlan Semple, who was originally the owner in fee of the lands described in the complaint, with his wife, on October 7, 1893, to secure a loan of $40,000, mortgaged the same to defendant Hay, a banker of his city. Later, in December of the same year, Semple conveyed to Hay an undivided half interest in other tracts of land in St. Louis county, by an instrument in form a warranty deed, for the purpose of giving additional security for the payment of such sums as were at that time, or thereafter might become, owing to Hay, which could be sold, and the proceeds, less necessary expenses, be held for the benefit of the mortgagee. In February of the year following, a release of the mortgage, but designating only a small number of tracts therein, not in the complaint, was made by Hay. An important contention on this review is whether such instrument was a full or only a partial satisfaction, which is hereafter considered.

The debt secured by the Hay mortgage, when due, was unpaid, and a foreclosure suit was in November, 1897, instituted against the mortgagors in the district court of St. Louis county. The defendants answered, did not deny the indebtedness, but claimed that there had been an extension of time for payment, which made the action premature. Negotiations thereafter took place between the parties,

whereby it was agreed that the trial of the suit might be delayed to afford opportunity for Semple to sell the timber on the lands, to liquidate or reduce the loan; and it was not until October, 1898, that judgment was entered determining the amount due to Hay, with costs, to be $49,703.95. Hostilities arose between Semple and Hay, which led to the employment of an intermediary named Loper, through whose efforts sales of the stumpage were effectuated, and the avails, less expenses and amounts given Mrs. Semple to secure her consent, were turned over to the mortgagee. In the latter part of November, 1899, a sale of the pine upon a considerable portion of these lands was made by Semple and wife to the Knox Lumber Company, defendant, for the aggregate sum of $21,218.75. Four hundred dollars was paid to Mrs. Semple, and a commission to Loper, which, with other expenses, left remaining for Hay $19,644, which was turned over and applied by the latter to reduce his loan to that extent. This purchase by the Knox Lumber Company is substantially its interest of the property in this suit.

In December, 1899, the lands embraced in the foreclosure judgment were offered for sale by the sheriff under the usual proceedings in such cases, and Hay bid in a considerable portion thereof for $11,536; but the sheriff's certificate was not executed until March 7, 1900, nor recorded until May 3, 1901, although upon due hearing the sale, upon report of the sheriff, had been confirmed within proper time by order of the court. Afterwards, on January 3, 1900, the timber on the lands bid in at this sale by Hay was conveyed by warranty deed from Semple and wife to the defendant Bell. This transaction was adopted by Hay, who executed a quitclaim deed of the same property to Bell. The total consideration for this sale was upwards of $11,000. It was made through the assistance of Loper, who received the money, and paid the same to Hay, less expenses, commission to himself, and a consideration to Mrs. Semple for her acquiescence; the balance being applied on the judgment, which the court finds was in accordance with the wishes of Semple.

The plaintiff, Scott, is the brother of Mrs. Semple. He contests the right of Hay to any interest in the lands in suit, also of the Knox Lumber Company and Bell to the pine purchased by these defendants, and rests his title to the property upon his quitclaim deed from Semple

and wife, which was recorded on November 17, 1900. Several parcels of land owned by Semple, subject to security for Hay's loan, were also sold to parties other than defendants; and the proceeds, less expenses, commissions, and amounts paid to Mrs. Semple, as the court has found, were with Semple's consent, applied for that purpose.

. There was a quitclaim deed from Semple and wife to Hay, which was sought to be utilized for that defendant; but it was not recorded until after the quitclaim deed to plaintiff Scott, and the court held that Hay acquired no rights thereby. Defendants do not question this finding, and it need not be considered further.

The court found as a fact that the conveyance from Semple and wife to Scott, under which the latter asserts his rights in this suit, was not made in good faith, or for a valuable consideration, against the mortgage and judgment liens of Hay, or of the sales of pine to the lumber company and Bell, which the court held were made in good faith and for full value.

It was sought, on the part of the plaintiff, at the trial, to establish that at the time when the foreclosure suit above referred to was commenced, in 1897, and during the period of the subsequent transfers, Semple did not possess sufficient alienary or disposing capacity, but was of unsound mind, and· incapable of conducting the negotiations wherein he permitted the judgment of foreclosure to be secured, as well as in the conveyances to the lumber company and Bell. Considerable evidence was offered and received upon this issue, and several assignments are based upon the refusal of the court to receive testimony in certain depositions from family physicians to show that Semple was insane.

The court found, upon the question of Semple's mental capacity, that he was sane at all the material times referred to, and upon an accounting, from the evidence, estimated the amounts paid to Hay, deducting charges for commissions, costs, taxes necessarily paid, sums paid to Mrs. Semple, which she demanded and received for her acquiescence in the conveyances referred to, and determined the amount still due and unpaid to Hay to be $17,027.44; holding that the same was a lien absolutely upon certain of the specified lands, but subject to the rights of the remaining defendants in the pine timber purchased by each, respectively. The relative rights of Hay and the other defend-

ants are left open for further consideration. It was also held that plaintiff was the owner of certain lands described therein, not affected by the judgment of Hay, but subject to the rights of the lumber company and Bell.

From a critical and thorough consideration of the evidence, we are required to hold that the findings of the trial court are amply sustained by evidence reasonably tending to support the same, providing the mortgage to Hay was not fully released, as claimed by plaintiff, which result has been reached upon the whole record, in the light of the arguments presented by counsel for the respective parties. We have given full weight to every suggestion that has been offered to establish the contention of plaintiff's counsel, but are constrained to hold that the findings of fact by the trial court are not against the weight of evidence, as well as that the application for amended findings was properly denied; also that the conclusions of law must be sustained, unless the so-called satisfaction of the Hay mortgage covered the entire lands in the complaint, and the court was in error in excluding portions of the depositions of the family physicians who testified to the mental capacity of Semple, whose rights plaintiff acquired by his quitclaim deed.

It is insisted, however, for plaintiff, that, as a matter of law, the release made by Hay in 1894, before the foreclosure suit, was a full, rather than a partial, satisfaction of the mortgage, and hence all proceedings thereafter to enforce this lien were void. This contention necessarily suggests a reference to the terms of the instrument itself. The essential portions read as follows:

"Know all men by these presents: That S. M. Hay of the city of Oshkosh, in the State of Wisconsin, does hereby certify and acknowledge that a certain mortgage bearing date on the 7th day of October A. D. 1893, made and executed by Parlan Semple, and Julia E. Semple, embracing and covering the southeast quarter of section one (1) of township No. sixty-one (61) north of range No. fourteen (14) west, and lots five (5), six (6) and seven (7) of section six (6), and lots one (1) and two (2) of section seven (7), of township No. sixty-one (61) north of range No. thirteen (13) west in the county of St. Louis, Minnesota,

and recorded in the office of the register of deeds in and for St. Louis county, in the state of Minnesota, on the eighth day of January A. D. 1894, at 2.40 o'clock p. m. in volume 77 of mortgages on page 400, is fully paid, satisfied and discharged. And the register of said county is hereby authorized to enter this satisfaction of record, as to lands above described."

It is probable, as claimed by counsel for Hay, that this instrument was filled out upon a printed blank which ended with the formal words "satisfied and discharged," and that the direction thereafter to the register to enter "satisfaction of record as to lands above described" was added in writing at the end of the same. Be this as it may, we should not decline to give full force to the view (notwithstanding the general statement that the mortgage is satisfied) that the particular and specific tracts are designated for a substantial purpose, which, in connection with the further limiting direction to the register to enter the satisfaction as to such lands only, is strongly suggestive that the instrument applied to such tracts as are mentioned, and excluded any in the mortgage which are not named. There is undoubtedly an ambiguity in expressing the purpose of the parties, by the apparent use of contradictory statements in this release. Such inconsistencies appearing on the face of the instrument would obviously require further inspection by those who should have their attention directed to the same. Any inquiry of this nature must have led to actual notice of the facts found by the court, viz., that the mortgage was considered a valid lien as to the lands described in the complaint. Cable v. Minneapolis, S. Y. & P. Co., 47 Minn. 417, 50 N. W. 528; Mercantile Nat. Bank v. Parsons, 54 Minn. 56, 55 N. W. 825; Security Bank v. Minneapolis C. S. Co., 55 Minn. 107, 56 N. W. 582; Nystrom v. Quinby, 68 Minn. 4, 70 N. W. 777.

A very considerable portion of the record is devoted to the issue raised by the denial of Semple's alienary capacity. This was alleged in the pleadings, and upon that issue testimony was offered to show that at and after the time of the foreclosure proceedings he was mentally unsound, and legally incapable of assenting to the negotiations upon which the decree was rendered, as well as the deeds to the lumber company and Bell. Several assignments challenge the rulings of

the court in the exclusion of testimony offered upon this issue, but we regard only one question thus presented of sufficient importance to require our consideration.

At the time when it was in any manner important to consider Semple's alienary capacity, an effort was made to show by two family physicians residing at his home that he was not mentally responsible for his acts. These physicians were general practitioners, who had not made any special study of diseases of the mind, and did not treat their patient for mental infirmity. They observed him quite critically, but only prescribed for complaints which he made concerning his health, and, upon this showing, were interrogated directly as to his mental condition, without previously detailing the facts upon which their conclusions were to be predicated, and without reference to any other evidence received upon this issue. The court excluded the proffered opinions of these witnesses, which is claimed to be error. We have already held that "a witness, though not an expert, who has testified to the party's acts and declarations, may be asked his opinion, based on those facts, of the mental capacity of the party." Woodcock v. Johnson, 36 Minn. 217, 30 N. W. 894.

The weight of reliable authority upon this question sustains the rulings of the court, for, where a personal examination has been made even by a physician or expert, he will be required, before giving his conclusions, to describe the symptoms which he observed, to aid the jury in forming a conclusion. Underhill, Ev., § 197. Neither medical experts nor other witnesses can be allowed to give an opinion of the mental capacity of a person without first detailing the circumstances and facts upon which such opinion is arrived at, and when the opinion of an expert upon the question of sanity is not based upon a hypothetical case, nor upon the testimony of other witnesses, but upon facts, symptoms, and circumstances that have come under his observation as attending physician of the patient or otherwise, such facts, symptoms, or circumstances must be fully stated by the testifying witness, so that the jury can determine whether the facts, as well as the opinion itself, are correct. Buswell, Ins. § 258; Beaubien v. Cicotte, 12 Mich. 459; Kempsey v. McGinniss, 21 Mich. 123; Hitchcock v. Burgett, 38 Mich. 501, 507; Hathorn v. King, 8 Mass. 371; Dickinson v. Barber, 9 Mass. 225; Hastings v. Rider, 99 Mass. 622; Gibson

v. Gibson, 9 Yerg. 329; Chandler v. Barrett, 21 La. An. 58, 62; People v. Nino, 149 N. Y. 317, 326, 43 N. E. 853; Hawley v. Griffin (Iowa) 82 N. W. 905.

The reason for adopting this rule seems to us to be manifest; otherwise, upon a question where symptoms only can furnish evidence of the mental condition of the subject of inquiry, essential elements upon which the inquiry is founded would be entirely wanting to aid in the investigation of the question before the court, and the result could be reached only by the number of witnesses on each side, or their respective weight avoirdupois or personal appearance, upon a matter where there should be a full investigation of all the conditions which must affect the judgment upon a most complicated and difficult subject.

It must be further held, on this contention, to be the recognized doctrine that where a contract with a person of unsound mind has been entered into in good faith, for a fair consideration, as found by the court here, without notice of anything that would put a prudent person upon inquiry of the infirmity, and has been so far performed that the parties cannot be replaced in their previous condition, it cannot be avoided. The rule has been thus stated by Baron Pollock in Molton v. Camroux, 2 Exch. 487, 502:

"We are not disposed to lay down so general a proposition as that all executed contracts bona fide entered into must be taken as valid, though one of the parties be of unsound mind. We think, however, that we may safely conclude that when a person apparently of sound mind, and not known to be otherwise, enters into a contract for the purchase of property, which is fair and bona fide, and which is executed and completed, and the property, the subject-matter of the contract, has been paid for and fully enjoyed, and cannot be restored so as to put the parties in statu quo, such contract cannot afterwards be set aside by the alleged lunatic or those who represent him." Dane v. Kirkwall, 8 Car. & P. 679; Price v. Berrington, 7 Eng. L. & Eq. 254; Loomis v. Spencer, 2 Paige, 153; Sprague v. Duel, 11 Paige, 480; Beals v. See, 10 Pa. St. 56; Lancaster v. Moore, 78 Pa. St. 407, 414; Young v. Stevens, 48 N. H. 133; Wilder v. Weakley's Estate, 34 Ind. 184; Behrens v. McKenzie, 23 Iowa, 333; Lincoln v. Buck-

master, 32 Vt. 652; 658; Eaton v. Eaton, 37 N. J. L. 108; Matthiessen v. McMahon's Admr., 38 N. J. L. 536; Scanlan v. Cobb, 85 Ill. 296.

The evidence does not warrant the conclusion that either of the defendants had notice that Semple, at the times it was at the trial claimed he was, was suffering from abberration of mind. No legal guardianship had been established for his protection in that behalf, and the doctrine laid down in the cases above referred to has been fully recognized, and is thus stated in the following language of this court: The mere fact that one of the parties to a contract was insane (he not having been so adjudged by judicial proceedings) does not render the contract void, but at most only voidable, and constitutes no ground for setting it aside, where the other party had no notice of the insanity, and derived no inadequate advantage from it, and where the parties cannot be placed in statu quo. Schaps v. Lehner, 54 Minn. 208, 55 N. W. 911; Youn v. Lamont, 56 Minn. 216, 57 N. W. 478; Morris v. Great Northern Ry. Co., 67 Minn. 74, 69 N. W. 628.

Other errors assigned, although fully considered on this review, are not deemed of sufficient importance to require specific notice, since we have reached the conclusion, after patient review of the whole record, that the order appealed from must be affirmed.

Order affirmed.