JOHN WALSO AND ANOTHER v. OLIVER F. LATTERNER.[1]

July 25, 1919.

No. 21,372.

**Trust — deposit in savings bank — presumption.**

1. Where a depositor makes a deposit in a savings bank of his own money in his own name in trust for a relative and dies before the beneficiary without doing any decisive act to disaffirm the trust, a presumption arises that an absolute trust was created as to the balance remaining on deposit at the death of the depositor.

**Same — evidence insufficient to overcome presumption.**

2. The fact that the depositor had deposited in his personal account the maximum amount permitted by the bank before making this deposit, and that he could withdraw this deposit during his lifetime, and did withdraw a part of it, unaided by other evidence, is not sufficient to overcome this presumption.

**Same — evidence of mental competency.**

3. The facts stated by the nonexpert witnesses as a basis for their opinions, did not tend to show that the depositor was incompetent to transact business and their opinions as to his competency were properly excluded.

After the first appeal reported in 140 Minn. 455, 168 N. W. 353, the case was tried before Hale, J., and a jury which returned a verdict for defendant. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*George S. Grimes* and *John Walso,* for appellants.

*Benton & Morley,* for respondent.

TAYLOR, C.

On April 8, 1911, Thomas J. Latterner deposited $5,000 in the Farmers and Mechanics Savings Bank of Minneapolis in his own name "in trust for Oliver F. Latterner." He died on December 26, 1915. Shortly after his death the bank pass book was delivered to Oliver who presented it to the bank and drew out the money. Plaintiffs, as administrators of

[1]Reported in 173 N. W. 711.

the estate of Thomas J. Latterner, brought this action to recover the money from Oliver, on the ground that it was the property of Thomas at his death and belonged to his estate. The action has been tried twice. At the first trial the court directed a verdict for the plaintiffs. On appeal by defendant, this court granted a new trial and the opinion written by the late Justice Bunn explains fully and clearly the rules of law governing "savings-bank trusts." Walso v. Latterner, 140 Minn. 455, 168 N. W. 353. The second trial resulted in a verdict for the defendant, and an appeal by plaintiffs brings the case again before this court.

At the second trial plaintiffs insisted that Thomas did not intend to create a trust in favor of Oliver, and that he was not of sufficient mental capacity at the time he made the deposit to understand and comprehend the nature and effect of the transaction. The court, in an early part of the charge, discussed the question of intent as if intending to submit that question to the jury, but closed the charge as follows:

"If you find that he was of sufficient capacity, and understood what he was doing in making this transaction, there being no evidence to show that he revoked it, you will find a verdict for the defendant. Upon the other hand, if you find that he was not competent, and did not understand this transaction, did not appreciate it or understand it, then you will find a verdict for the plaintiff."

Plaintiffs contend that the evidence disclosed facts on which the jury could have found that Thomas did not intend to create a trust in favor of Oliver and that this charge, which in effect took that question from the jury and determined it as a matter of law, was error.

There was affirmative evidence tending to show a motive for creating this trust, and also tending to show that Thomas intended to create it and understood that he had done so. There is no affirmative evidence to the contrary. The facts from which plaintiffs would have the jury draw a contrary inference are the following: The regulations of the bank fixed the sum of $5,000 as the maximum amount which could be deposited in any one account, but if he desired to do so, a depositor could carry a personal account in his own name, could also carry an account in his own name in trust for another, and could deposit the maximum of $5,000 in each of these accounts. In case he made a deposit in his own name in trust for another, the provisions governing such trusts and printed in the pass book issued to him for such deposits, per-

mitted him to withdraw it at any time during his lifetime, but provided that at his death the amount then on deposit should be paid to the beneficiary in the absence of written instructions making a different disposition of it. Thomas had carried a personal account in this bank for some years. At the time of making the deposit in question he had received something over $9,000 from the sale of a tract of land. He deposited $3,600 in his personal account which brought that account up to the maximum of $5,000 and then deposited $5,000 in his own name in trust for Oliver. During his lifetime he withdrew $85 from the trust fund in small amounts, a small part of the accumulated interest. Plaintiffs urge that the jury might have inferred from these facts that Thomas deposited the money in trust because he could not place it in his personal account, and not for the purpose of making a provision for Oliver.

The rule governing so-called "savings-bank trusts," quoted from the New York court in the opinion on the former appeal, [1] after defining the right of the depositor to withdraw the deposit or revoke the trust in his lifetime, states:

"In case the depositor dies before the beneficiary, without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

There is no evidence tending to show a revocation or any act of disaffirmance on the part of Thomas. The provisions governing the trust were not only printed in the pass book which Thomas received when he made the deposit, but were explained to him at that time by the officer of the bank who issued the pass book, and there is also evidence of subsequent statements made by him, tending to show that he understood and expected that the money would eventually go to Oliver. It is proper to note that some of the evidence at this trial was not presented at the first trial.

We think that the presumption that Thomas intended the trust to be given effect according to its terms at his death has not been overcome; that the facts pointed out by plaintiffs would not justify the jury in conjecturing that Thomas made the deposit in the form of a trust merely as a matter of convenience without intending the money to go to Oliver, and that withdrawing the question of intent from the jury was not error.

The finding of the jury that at the time he created the trust Thomas

[1][140 Minn. 458, 68 N. W. 353.]

possessed sufficient mental capacity to understand and comprehend the nature and effect of his act, is amply supported by the evidence, and the only remaining question requiring consideration is whether the court erred in excluding the opinions of three nonexpert witnesses offered for the purpose of showing lack of such mental capacity, and in charging the jury that the testimony of Doctor Eitel that in his opinion Thomas was not competent to transact business, was the only testimony in the case which would warrant them in finding that Thomas was incompetent.

Each of the three nonexpert witnesses had known Thomas for many years. Each was asked whether in his opinion, based on his knowledge and observation, Thomas was competent to transact ordinary business in 1911. The court excluded these questions on the ground that no proper foundation had been laid for them. The facts and circumstances stated by each of the three witnesses as the basis for his testimony were substantially the same. Plaintiffs, in their brief, say:

"They each testified in effect that during 1911 he (Thomas) could not carry on an intelligent or connected conversation on any subject."

This is the only statement of any of these witnesses urged by plaintiffs in their brief as tending to show incompetency on the part of Thomas. They each stated if they began talking with him on a given subject, he would soon change to another subject, but do not go to the extent of saying that he failed to comprehend what was said to him or failed to express whatever thought he wished to convey. They further stated that he was peculiar; that if they wished to buy any of his products it was difficult to get him to agree to sell or to fix a price, unless the matter was brought up in such a way as to induce him to make a proposition himself; that when he made a sale he always insisted on having his pay at that time and was careful to see that he gave the exact quantity and no more, and that he always secured fair prices for whatever he sold.

Whether a sufficient foundation has been laid for admitting the opinion of a nonexpert witness as to mental incompetency is for the trial court to determine in the exercise of a reasonable judicial discretion, and we are of opinion that the court did not overstep the bounds of its discretion in holding that the facts above outlined failed to constitute a sufficient foundation for the admission of the opinions of these witnesses. See 1 Dunnell, Minn. Dig. § 3316; Scott v. Hay, 90 Minn. 304, at page 312,

97 N. W. 106. We are also of opinion that the court was justified in holding that such facts did not tend to show that Thomas lacked sufficient mental capacity to determine the disposition which he wished to make of his property.

Order affirmed.