ELIZABETH M. KNOX *vs.* MATTHIAS HAUG.

Submitted on briefs Dec. 24, 1891.   Decided Jan. 18, 1892.

**Incapacity of a Grantor—Committal to Hospital not Proof of.**—The proceedings under 1878 G. S. ch. 35, § 21, are not evidence of mental incapacity to make contracts on the part of the person committed to the hospital for insane.

Appeal by plaintiff from an order of the district court of St. Louis county, *Ensign,* J., made August 22, 1891, denying her motion for a new trial.

The action was ejectment to recover possession of an undivided half of certain town lots in the town of Maple Grove, in St. Louis county.   The defendant denied plaintiff's title and right to possession, and claimed to have title himself in fee.   William L. McLennan owned the property, July 12, 1875, and on that day conveyed it to the plaintiff, but she did not record her deed until October 10, 1889.   McLennan meantime conveyed the property to defendant,

February 25, 1886, and this deed was recorded June 21, 1886. McLennan was adjudged insane, November 12, 1885, by the probate judge of St. Louis county, under 1878 G. S. ch. 35, § 21, and committed to the First Hospital for Insane at St. Peter. He was permitted to leave the hospital with his friends, February 4, 1886, and was legally discharged therefrom May 5, 1886. A jury was waived, and the cause tried on October 2, 1890. Findings were filed March 14, 1891, directing judgment for defendant. Plaintiff moved for a new trial, and, being denied, she appealed, and assigned as error the holding that McLennan's deed to Haug was a valid instrument.

*White, Reynolds & Schmidt,* for appellant. *Cash & Williams,* for respondent.

GILFILLAN, C. J. The contest in this case is between plaintiff, as grantee in a deed from one McLennan, executed July 12, 1876, but not recorded till October 10, 1889, and defendant, as grantee in a deed from the same grantor, executed February 26, 1886, and recorded June 21, 1886. Plaintiff assails this deed on the ground that when he executed it the grantor was insane. To prove this he introduced on the trial proceedings before the judge of probate in St. Louis county, had under 1878 G. S. ch. 35, § 21, in which on November 12, 1885, McLennan was committed to the hospital for the insane at St. Peter, as an insane person needing care and treatment. It was also proved that February 4, 1886, he was, by the superintendent of the hospital, permitted to leave it under charge of his friends, and May 5th following was legally discharged from it. This was the only evidence on the question of his mental capacity to execute the deed to defendant. The question in the case is as to the effect of these proceedings, as evidence of McLennan's incompetency to execute the deed to defendant. At the common law an inquisition finding one a lunatic upon the writ *de lunatico inquirendo* was evidence of his lunacy as to any one and in collateral proceedings; and plaintiff claims that the finding upon the proceeding before the probate judge is the same in effect as such inquisition. The section of statute referred to authorizes the judge of probate, or, in his absence, the court commissioner, upon information being filed before him that there is an insane person in his county needing care and

treatment, to cause the person so alleged to be insane to be examined by a jury of two respectable persons, besides himself, one, at least, of whom shall be a physician, to ascertain the fact of his insanity, and, if he is found to be insane, the judge or commissioner shall, "upon a written certificate of the judge directed by a majority of the jury," issue duplicate warrants, committing the person so found insane to the care of the superintendent of the hospital. The provisions of this statute are notable for their simplicity, but hardly to be commended as guarding against abuse. Certainly a court would not, by construction, enlarge its scope or the effect of the proceeding. Chapter fifty-nine, (59,) section eight, (8,) provides that the probate court may appoint a guardian or guardians of any person who, by reason of old age, or loss or imperfection of mental faculties, is incompetent to have the charge or management of his property, and prescribes who may make the application. Section nine (9) provides for the appointment of a time and place for hearing, and for notice thereof, to the person proposed to be put under guardianship. Section ten (10) provides for a full hearing, in which all competent evidence for and against the application is to be considered. Section eleven (11) provides that the petitioners may cause a copy of the application of the notice and proof of service to be filed and recorded in the office of the register of deeds, and, if a guardian shall be appointed, "all contracts, except for necessaries, and all gifts, sales, or transfers of real or personal estate, made by the person put under guardianship, after the filing of such papers in the office of the register of deeds, and before the termination of the guardianship, shall be void." The proceedings under these sections of chapter fifty-nine (59) are not materially different from those on the writ *de lunatico*, except that the hearing is before the court, instead of before commissioners with a jury. Notice to the person charged with lunacy was generally required, and, where notice of the hearing before the commissioners was not required, the person had a right to traverse the inquisition, and have a hearing before the court. 11 Amer. & Eng. Enc. Law, p. 114 et seq. The inquisition found, not only that the person was of unsound mind, but that he was mentally incapable of governing himself, or of managing his affairs. On the

other hand, the proceeding under chapter thirty-five (35) lacks most of the features of the proceeding under the writ *de lunatico.* Section twenty-one (21) does not provide who—a public officer, a relative, or a stranger—may file the information; no writ or notice issuing from a court is provided for; the finding is not a record of any court, (nothing but the duplicate warrant being filed in the office of the judge of probate.) The only matter to be investigated is the alleged insanity and need of care and treatment. The degree of the insanity, except so far as necessary to ascertain if care and treatment be needed, and its effect on the capacity of the person to do business or manage his property, need not be investigated. A person may be insane on some one subject, and still be as able as the sanest to manage his own property and affairs. Such a person might need and be a proper subject for care and treatment within the meaning of the section. So might a person for whom a guardian has been appointed under chapter fifty-nine (59.) And it is significant that while chapter fifty-nine (59) prescribes for the finding of mental incapacity and the appointment of a guardian, and the effect on the person's capacity to make contracts, that followed a finding of lunacy under the writ *de lunatico,* section twenty-one (21) of chapter thirty-five (35) gives no other effect to the finding contemplated by it than that the person may be committed to the hospital. The purpose of the latter section is manifest. The state having established hospitals for those afflicted with mental diseases, the proceeding in that section is the mode provided for ascertaining who are proper subjects for the charitable care and attention thus provided. Chapter fifty-nine (59) provides the only statutory mode for determining the *status* of the person with respect to managing his own affairs.

Order affirmed.

(Opinion published 50 N. W. Rep. 934.)