JAMES R. THORPE and Another v. BENJAMIN F. HANSCOM and
Others.[1]

February 7, 1896.

Nos. 9809—(317).

**Deed of Insane Person under Guardianship—Validity.**

   The deed of an insane person not under guardianship is voidable only,
   but while he is under actual and subsisting guardianship he is conclu-
   sively presumed incompetent to make a valid deed concerning his estate,
   though he is in fact sane at the time he attempts to do so.  If, however,
   at the time he made the deed, he was in fact of sound mind, and the con-
   tract fair, and the guardianship had been practically abandoned, the deed
   is valid, though the guardian had not been formally discharged by the
   court.

**Conclusion Sustained.**

   The facts found by the court considered, and *held* that they sustain its
   conclusions of law.

Appeals by defendants Benjamin F. Hanscom and Caroline E.
Hanscom from a judgment of the district court for Hennepin coun-
ty, in favor of plaintiffs, entered in pursuance of the findings and
order of Belden, J.  Affirmed.

*Louis A. Reed*, for appellants.

*Woods & Kingman*, for respondents.

START, C. J.  Action to foreclose a mortgage made by the de-
fendants Benjamin F. Hanscom and his wife, Caroline E. Hanscom,
upon the land of the former.  Separate answers were interposed on
behalf of each of the defendants by their guardian ad litem.  The
defense on the part of Hanscom was that when he executed the
mortgage he was insane and under guardianship, and on the part
of his wife that she was also insane when she signed the mortgage.
Judgment for the plaintiff for a foreclosure of the mortgage and a
sale of the premises, from which a separate appeal was taken on
behalf of each defendant.

[1] Reported in 66 N. W. 1.

There is no bill of exceptions or settled case in the record, and the only question for our consideration is whether the conclusions of law of the trial court are sustained by the finding.

The trial court found that the defendant Benjamin F. Hanscom, in January, 1889, was committed by the probate court of Hennepin county to the Hospital for the Insane at Rochester for treatment, and that in May of the same year he left the hospital, returning to his home in Minneapolis, and was thereafter and during the summer of 1889 discharged from the hospital. That in the meantime, on February 27, 1889, the probate court duly issued to the defendant Brown letters of guardianship appointing him guardian of the person and estate of Hanscom during his insanity, that he accepted the trust, and took control of the property of his ward, and continued such control except as hereinafter stated. That, after Hanscom's return and his discharge from the hospital, he engaged in business in Minneapolis, in his own name and on his own account, carrying on the business of huckster and vendor, and in the fall of 1891 he rented a store, and engaged in the business of a commission merchant, also buying and selling fruit at wholesale and retail, and continued to carry on this business until after the making of the mortgage in question in this case; that he kept an open bank account in his own name, depositing and drawing moneys therefrom in the ordinary course of business. That the guardian, Brown, resided in the same neighborhood with Hanscom, and knew in a general way of his occupation and business. The court also found that during the years 1891, 1892, and 1893 Hanscom bought and sold real estate in the county of Hennepin, and that between January, 1892, and April, 1893, he made seven deeds of real estate to different parties, which were recorded in the office of the register of deeds for Hennepin county; that in February, 1892, he made a lease of the premises described in the complaint in this action for three years, and in March of the same year he foreclosed 12 mortgages held and owned by him on land in the county of Hennepin, personally employing and paying his attorney, and making the affidavits in each case as to occupancy and disbursements, and afterwards assigned several of the certificates of foreclosure sale; that these real estate transactions were duly re-

corded, but there is no evidence that Brown was notified of them except by such record.

The court further found that Hanscom applied to the plaintiffs in July, 1892, for a loan of $3,000 for use in his business in which he was then engaged, to be secured upon the premises described in the complaint, and after investigation of the security offered and the title thereto, and making inquiries as to the character and business of Hanscom, the plaintiffs accepted his application for the loan for E. Jones Andrews, a nonresident, for whom they negotiated the loan; and thereupon, and on August 1, 1892, Hanscom and wife executed the mortgage here in question upon the premises to secure such sum, with interest, and Hanscom received therefor from the plaintiffs, as such agents, the full sum of $3,000, less reasonable commission and expenses of making the loan, which sum he deposited in the bank in his own name, and thereafter checked out a considerable part thereof and applied it to the payment of his debts contracted in his business. That this mortgage was duly recorded on August 6, 1892, and was subsequently, and before the commencement of this action, assigned to the plaintiffs. That Brown had no knowledge of the execution of this mortgage by Hanscom until after the transaction was closed, and that some nine months afterwards he served upon the plaintiffs notice of disaffirmance of the mortgage, but that no offer was ever made by him or any one else to refund any portion of the money so received by Hanscom. The court also found that at the time Hanscom negotiated such loan, and executed the mortgage to secure it, he was in fact of sound mind and fully capable of understanding and carrying out the transaction with the plaintiffs. And, further, that the plaintiffs in this entire transaction acted in perfect good faith, with all due care and caution, and had no knowledge of the guardianship proceedings, or of any disability on the part of Hanscom to execute the mortgage and the note accompanying it, for the purpose of securing such loan. And, further, that no record of the guardianship was ever made in the office of the register of deeds of the proper county until months after the execution and delivery of the mortgage. That nothing has ever been paid on the principal or interest of the note and mortgage, and the whole thereof is due. The foregoing are substantially the facts upon which the

trial court's conclusion to the effect that the mortgage is valid, and that it be foreclosed, rests.

At the time the guardian was appointed, February 27, 1889, G. S. 1878, c. 59, § 11, providing for filing and recording a copy of the petition, notice, and proof of service in the office of the register of deeds, was in force, but its provisions were not complied with. This section was repealed by the Probate Code October 1, 1889, and re-enacted by Laws 1893, c. 116, § 12.[2] Hence, at the time the mortgage was given there was no statute for recording the petition and notice for the appointment of guardian of an insane person in force; but when Hanscom was placed under guardianship such law was in force, and if it had been then complied with the plaintiffs and others having real-estate transactions with the defendant, in examining the title of his real estate, would have been advised of the fact that he was under guardianship. The view we take of this case makes it unnecessary to decide what the effect of such omission to record the petition has upon the legal rights of the respective parties hereto.

As already suggested, the only question we have to answer is whether, upon the foregoing facts, the trial court erred in holding the mortgage a valid security and ordering judgment of foreclosure for the plaintiffs; because, for the purpose of this appeal, the facts we have referred to stand admitted, or, rather, it is admitted that they were proven by competent evidence to the satisfaction of both parties. Naturally, the first question which an honest layman would ask on reading the foregoing facts would be, "What possible reason in justice can there be why the plaintiffs should not receive back their money or enforce their security therefor?" We confess our inability to suggest any just or equitable reason why the action of the trial court ought not to be affirmed, for the defense is not supported by a shred of equity. The defendant makes no claim that the transaction in question was an improvident or an unfair one for him, or that he was not in fact as mentally competent to make the loan and give the mortgage as any other man, or that it was not for the interest of himself and his estate, or that the plaintiffs did not act in perfect good

2 See G. S. 1894, § 4549.

faith and loan him $3,000 on the faith of his mortgage, or that he has ever offered to return it; but he plants himself upon the technical proposition that the action of the probate court in placing his person and estate under guardianship was conclusive evidence of his mental incompetency to act for himself, and that until the guardian was formally discharged, and his estate restored to him by the judgment of the probate court, his contracts were under all circumstances absolutely void.

The law as to the contracts, including deeds and mortgages, of an insane person, is well settled. The deed of an insane person not under guardianship is not void, but only voidable, but while he is under actual and subsisting guardianship he is conclusively presumed incompetent to make a valid contract concerning his property, though in fact he is sane at the time of making the same. This rule is based upon convenience and necessity, for the protection of the guardian, and to enable him properly to discharge his duties as such. Without this rule it would be difficult, if not impossible, for the guardian to execute his trust, for in every action concerning the property of the ward he might be obliged to go before the jury upon the question of the ward's sanity, and one jury might find one way and another the other way. Leonard v. Leonard, 14 Pick. 280; 2 Greenleaf, Ev. § 371. Now, when the reason for the rule does not exist, the rule does not apply. Hence, if there is in fact no actual and subsisting guardianship, but the same has been practically abandoned, and the person who had been under guardianship after such abandonment makes a deed at a time when he is in fact of sound mind, and the contract is fair, the deed will be enforced, though the guardian has not been discharged by any judicial action. Elston v. Jasper, 45 Tex. 409.

The evil and injustice of holding void the deed or contract of a person placed under guardianship during his insanity, made after the guardianship had been in fact abandoned, and when he was of sound mind, are emphasized by the facts of this case, where the defendant was in fact sane, and in the possession of his property, engaged in business as a merchant, also in buying and selling real estate, and foreclosing his mortgages, for some three years before the mortgage in question was made, without any objection or assertion of his rights by the guardian. To permit the defendant

under such circumstances to repudiate all of his contracts and transactions during those years, simply because his guardian had not been formally discharged by the court, would be a travesty on the administration of justice. It is true that the trial court did not in express terms find that at the time the mortgage was made there was in fact no subsisting guardianship, and that the same had been practically abandoned, but such is the necessary inference and conclusion from the evidentiary facts actually found. It follows that the mortgage having been made after the guardianship had in fact terminated and been practically abandoned, and at a time when the defendant was of sound mind, it is valid.

The trial court included in the judgment $75 for attorney's fees on the foreclosure of the mortgage as stipulated therein, but made no finding of fact that such amount was reasonable. The defendant assigns this as error, and relies upon Johnston H. Co. v. Clark, 30 Minn. 308, 15 N. W. 252. The case is not in point, for it relates to a stipulation in a note for attorney's fees which are not limited and regulated by statute. The attorney's fees in the mortgage in question were within the limitation of the statute, and it is not to be inferred that the court allowed a greater amount as attorney's fees than was reasonable.

The appeal of the defendant Caroline E. Hanscom is dismissed by stipulation, without costs to either party, she having died since the appeal was taken. Upon the appeal of the defendant Benjamin F. Hanscom the judgment of the district court is affirmed.