GEORGE SCHULTZ v. FRANK H. OLDENBURG AND ANOTHER.
HARRY STROM, APPELLANT.[1]

February 18, 1938.

No. 31,528.

[1]Reported in 277 N. W. 918.

238

*Lauerman & Pfeiffer,* for appellant.
*Harold E. Flynn,* for respondent.

JULIUS J. OLSON, JUSTICE.

Harry Strom, as guardian of the estate of defendant Lillie Olden-burg, appeals from an order denying his motion to vacate, as to his ward, a personal judgment entered against both defendants, Frank H. and Lillie Oldenburg, on July 28, 1931.

The facts are not in dispute. The named defendants are husband and wife and have lived and cohabited together as such over a period of more than 20 years (except as hereinafter noted) next prior to the time this matter came before the court on the guardian's said motion. On June 1, 1927, they had, for full value, executed a note payable to Christ Busse, plaintiff's intestate, for $1,000, due on demand, with interest at five per cent per annum. There had been paid $100 to apply thereon between June 1, 1928, and the same date in 1929. On June 26, 1931, the summons and complaint were personally served upon both makers at their home in Hector, where both then resided and where they had resided and continued to re-side over a period of many years both before and after the date of service. Neither answered. On July 28 judgment by default was entered for the amount of the note with accumulated interest and costs, the whole amounting to $1,117.98. Summons and complaint are in the usual form. It is not suggested, much less claimed, that plaintiff or his intestate knew Mrs. Oldenburg was under guard-ianship.

On March 29, 1930, the probate court of Renville county, of which the Oldenburgs then were and have since continued to be resident, issued to said Harry Strom letters of guardianship upon the estate of the wife. His authority to act in that capacity is not ques-tioned. Prior thereto, on September 8, 1928, Mrs. Oldenburg had been by the same court found to be an insane person and committed to the hospital for the insane at St. Peter. She was taken thereto the same day and there remained as a patient until November 4 of that year, when she was "paroled" and permitted to go to her home, and there she has remained since. Her final discharge was made and entered January 27, 1931.

On June 9, 1937, the guardian's motion to vacate the judgment came on for hearing before the court. The order here for review was made July 12, 1937, almost six years after entry of judgment.

The court in its memorandum denying the motion stated that at the time of the service of the summons and complaint Mrs. Oldenburg was living with her husband "as any normal person would live." There is other proof in the record establishing that except for the brief period of less than two months, while at St. Peter, she has lived continuously with her husband and has performed the duties and shared the responsibilities of the average normal housewife. There is no claim that at the time the debt was incurred she was incompetent; nor is there any question raised respecting the validity of the promissory note upon which the action is founded. As a matter of fact, when this matter was heard before the court and the order here for review was entered, an opportunity was offered her and her guardian permitting the filing of an answer so that if she or her guardian had any defense to the action same might be pleaded and the case heard on its merits. The offer was refused. Instead this appeal was taken. The court was of the view that the purpose of the statute respecting requirement of service also upon the guardian "is, as I understand it, to provide the guardian the opportunity to perform his statutory duty to defend"; also, that if plaintiff had been unwilling to permit an answer to be interposed, "this court would certainly have allowed defendant to interpose a defense." The court was of opinion that failure to serve the guardian was an irregularity only and did not deprive the court of jurisdiction of defendant Mrs. Oldenburg. That is the sole question here. The guardian concedes that if the statute be construed as directory only then the judgment is not void but voidable only; hence, if it be so held, the trial court's order was right. But he strenuously urges that jurisdiction is wholly lacking; that the judgment is and always has been a nullity; that the court's refusal to grant his motion was fatal error.

The applicable statute is 2 Mason Minn. St. 1927, § 9228, which reads:

"Service of summons—On natural person—Service of the summons on natural persons residing or being within the state shall be made by delivering a copy thereof, as follows:

"1. To the defendant personally.

"2. If the defendant have a resident guardian, appointed for any purpose, to such guardian also.

"3. If he be a minor under the age of fourteen years, and have no such guardian, to his father also, or to his mother, or, if he have neither within the state, to the person having the control of such minor, or with whom he resides, or by whom he is employed.

"But in all such cases it shall be deemed a personal service of the summons if the copy thereof be left at the house of the usual abode of the person to be served, with some person of suitable age and discretion then residing therein."

■ By virtue of art. 6, § 14, of our constitution, "legal pleadings and proceedings in the courts of this state shall be under the direction of the legislature. The style of all process shall be, 'The State of Minnesota,'" etc. Pursuant to constitutional authority, the legislature in 1 Mason Minn. St. 1927, § 157, has provided:

"Every writ or process issuing from a court of record shall be tested in the name of the presiding judge, be signed by the clerk and sealed with the seal of the court, be dated on the day of its issue, and before delivery to the officer for service, shall be indorsed by the clerk with the name of the attorney or other person procuring the same;  *  *  *"

■ In many jurisdictions a summons issues out of the court in which the proceeding is brought. In this sense the manner of procedure here does not partake of anything resembling process as used in such jurisdictions. This court has held in numerous cases that a summons is not process within the meaning of the constitutional provision and that it need not run in the name of the state. "It [the summons] is a mere notice given by plaintiff or his attorney to the defendant that proceedings have been instituted and judgment will be taken against him if he fails to defend." Jurisdiction is acquired by service of summons because the legislature has so pro-

vided. But the legislature could undoubtedly provide "that the court shall acquire jurisdiction by the service of the complaint without a summons, or in any other manner by which the defendant may be notified that the proceedings have been instituted against him." 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1937) § 7802, and cases cited under notes.

The requisites to be contained in the summons are defined by statute, 2 Mason Minn. St. 1927, § 9225. It is to be liberally construed. 5 Dunnell, Minn. Dig. (2 ed.) § 7803, and cases under note 29. By reason thereof we find that the summons may be subscribed by the printed signature of plaintiff or his attorney; that a plaintiff who is not an attorney may sign a summons in his own behalf. *Id.*, § 7804. Numerous defects have been passed upon by this court. A few illustrations will be sufficient: In Hanna v. Russell, 12 Minn. 43 (80), it was held that the absence of the name of the state and the number of the judicial district was not fatal. In Hotchkiss v. Cutting, 14 Minn. 408 (537), irregularities in respect of notice to serve answer and notice of applying to the court for relief were held not fatal. In White v. Iltis, 24 Minn. 43, the use of the word "decision" instead of the word "direction" in notice of application to the court was held not fatal. In Sievert v. Selvig, 175 Minn. 597, 222 N. W. 281, it was held that there was not want of jurisdiction by reason of the fact that in the caption of the complaint attached to and served with the summons the wrong court was named. In MacLean v. Lasley, 181 Minn. 379, 232 N. W. 632, the summons and complaint were sealed in an envelope addressed to defendant and left with a person at defendant's residence. Defendant actually received it. While the practice was disapproved, it was held not fatal to jurisdiction. In Brady v. Burch, 185 Minn. 440, 441, 241 N. W. 393, the complaint correctly laid the venue in the district court, but the summons incorrectly put it in the municipal court. There the defect in the summons was held fatal to jurisdiction because the purpose of the service of summons to give defendant notice "fails if the notice given is to appear in a court other than the one wherein the action is pending."

It was held in Lockway v. Modern Woodmen, 116 Minn. 115, 133 N. W. 398, Ann. Cas. 1913A, 555, that a summons in a civil action may be amended upon proper application. The cases are there carefully reviewed, and no further comment need be made respecting them. So in Morrison County Lbr. Co. v. Odilon Duclos, 131 Minn. 173, 175, 154 N. W. 952, 953, the named defendant in the summons was P. O. Duclos. The instrument was served upon Odilon Duclos, the party intended to be named as defendant. After service was so made the error was discovered but not until after the time had expired within which an action could be commenced to foreclose the mechanic's lien sought to be foreclosed in that case. Application was made to the court for leave to correct the faulty instrument. The court granted the motion, and on appeal the action of the trial court was sustained because "had defendant been the only person by the name of Duclos no claim could well have been made that the trial court did not properly exercise his discretion. Because there happen to be two or more of that name ought not to preclude relief to plaintiff. Every defense this defendant had when the action was begun is available to him now."

It is true that most of the cases to which reference has been made relate to defects in the summons itself rather than to defects respecting service. We have already quoted the statute respecting the manner of service upon "natural persons." Appellant admits, as he must, that if there were no guardianship the court undoubtedly had jurisdiction of Mrs. Oldenburg. Does then the statutory direction respecting service *also upon the guardian* compel the conclusion that the court had *no jurisdiction* because there was such guardian who was not served?

█ The law is well settled that a contract of an insane person is not void but voidable; also that a person may be insane on some subject and still be able to manage his property and affairs. Knox v. Haug, 48 Minn. 58, 61, 50 N. W. 934. He may have capacity to make an ordinary contract though he lacks testamentary capacity. Young v. Otto, 57 Minn. 307, 311, 59 N. W. 199. Proceedings for commitment to a state asylum are not evidence of incapacity. Knox v. Haug, *supra;* Schaps v. Lehner, 54 Minn. 208, 211, 55 N. W. 911.

It is admissible and proper to inquire into such person's business acts at or about the time of the instrument involved in the particular case. His declarations, oral or written, tending to show his comprehension or noncomprehension of daily occurrences in his business, are proper elements to be considered. 3 Dunnell, Minn. Dig. (2 ed.) § 4519, and cases cited under notes.

"A judgment in proceedings for the appointment of a guardian of an incompetent person is admissible in evidence, but not conclusive, in any litigation, to prove the mental condition of the person at the time the judgment is rendered, or at any past time during which the judgment finds the person incompetent." *Id.*, § 4517 (Supps. 1932, 1937), and cases under note 9; Annotation, 68 A. L. R. 1309; 108 A. L. R. 47; Champ v. Brown, 197 Minn. 49, 266 N. W. 94; Johnson v. Hanson, 197 Minn. 496, 267 N. W. 486.

It has been held that an adjudication of insanity and commitment to an insane asylum is evidence of insanity. 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1937) § 4517, and cases under note 10.

An insane person may sue and be sued. In either event he should appear by a next friend, general guardian, or guardian *ad litem.* Plympton v. Hall, 55 Minn. 22, 56 N. W. 351, 21 L. R. A. 675. While under the statute, 2 Mason Minn. St. 1927, § 8937, it is the duty of the general guardian of such person to "appear for and represent his ward in all legal proceedings, unless another person is appointed for that purpose"; nevertheless this "power of the district courts to exercise such authority is not taken away by the statutes authorizing the probate courts to appoint general guardians for insane persons." 3 Dunnell, Minn. Dig. (2 ed. & Supp. 1937) § 4529, and cases under note 63; Plympton v. Hall, *supra.* Where personal service is made upon the insane person, mere failure to appoint a guardian *ad litem* does not render the judgment void. Lundberg v. Davidson, 72 Minn. 49, 74 N. W. 1018, 42 L. R. A. 103. And in divorce proceedings it has been held that the court may obtain jurisdiction by service of summons and complaint upon the insane defendant. Wilson v. Wilson, 95 Minn. 464, 104 N. W. 300. That case suggests that the safe rule of practice is for the trial

court to require the appointment of a guardian *ad litem* so that the rights of the unfortunate defendant may be protected at the trial and during subsequent proceedings. 3 Dunnell, Minn. Dig. (2 ed.) § 4531. And an action on contract will lie in the district court against an insane person under guardianship. *Id.*, § 4532; Pflaum v. Babb, 86 Minn. 395, 90 N. W. 1051; Clark v. Buck, 152 Minn. 278, 188 N. W. 326.

By 2 Mason Minn. St. 1927, § 8927, it is provided that "the petitioner or any person interested" in the appointment of a guardian for an incompetent "may cause a copy of the petition, and of the notice and proof of service thereof, to be filed for record with the register of deeds in any county in which real estate owned by the person proposed to be put under guardianship is situated; and, if a guardian be appointed on such petition, all contracts except for necessaries, and all gifts, sales, and transfers of real or personal property, made by the ward after such filing before the termination of the guardianship, shall be void." Knox v. Haug, 48 Minn. 58, 50 N. W. 934; Thorpe v. Hanscom, 64 Minn. 201, 204, 66 N. W. 1.

From what has been said in prior cases it is clear that what the law aims to do is to protect the property and estate of one who is in fact incapable of doing so for himself. But his incapacity cannot be changed from a shield of protection to a rapier of offense. Thus in Thorpe v. Hanscom, 64 Minn. 201, 205, 206, 66 N. W. 1, 2, this court held that although a deed of an insane person while "under actual and subsisting guardianship" is conclusively presumed to be invalid, nevertheless where, as there appeared, the guardianship had in fact been "practically abandoned, and the person who had been under guardianship after such abandonment makes a deed at a time when he is in fact of sound mind, and the contract is fair, the deed will be enforced, though the guardian has not been discharged from any judicial action. * * * To permit the defendant under such circumstances to repudiate all of his contracts and transactions during those years, simply because his guardian had not been formally discharged by the court, would be a travesty on the administration of justice." For that reason, the involved instrument was held binding upon the ward in spite of the guard-

ianship.  In the later case of Dahlsie v. Hallenberg, 143 Minn. 234, 235, 236, 173 N. W. 433, the defendant was past 80 years of age at the time of the alleged assault.  "He had been adjudged by the probate court to be incompetent and unable to care for and manage his property, and a guardian of his person and property had been appointed.  The court submitted to the jury the question of punitive damages.  He submitted to them the question 'whether the defendant was mentally capable of making a wilful and malicious assault,' and in substance instructed them that punitive damages could not be awarded if defendant's mental condition was such that he did not realize the nature of his act.  Defendant contends that punitive damages cannot properly be given against a person under guardianship.  *  *  *  The purpose of the inquiry in the proceeding for the appointment of a guardian is to determine capacity to manage property and transact business.  The determination is in no sense a determination of the question of mental inability to commit a wilful or malicious assault.  The order in the guardianship proceeding was evidence to be considered by the jury as bearing upon defendant's ability to entertain a malicious intent, but it was not conclusive of his inability to do so.  The court properly submitted the question of punitive damages to the jury."  There was a verdict for plaintiff which was here affirmed.  One of our latest cases is Champ v. Brown, 197 Minn. 49, 61, 266 N. W. 94, 100.  There the ward sought to charge the guardian with improper investments while he acted as her guardian.  It was shown at the trial and found to be a fact that at the time the investments complained of were made she was in fact mentally competent and had approved the investments when made.  The findings to that effect were here sustained because, "She should not be permitted to gain an unjust advantage over respondent where, as here abundantly appears, she was in fact fully competent."

■ There are practical reasons too why we should hold the involved statute to be directory rather than mandatory.  Both plaintiff and his intestate were residents of Scott county, defendants of Renville county.  It is easily conceivable that a plaintiff may be the holder of a claim against many defendants.  They may well be

residents of different counties. Perhaps some of them may be floaters who move from place to place and from county to county. Is it reasonable to require that plaintiff in any such case must, at his peril, investigate the probate records of every county to determine what defendant, if any, is under guardianship? If such person has been placed under guardianship in one county but later removed to another, is the plaintiff required to search the records of every county in the state to ascertain whether such defendant was in fact placed under guardianship in any of them? So to hold is going far beyond what we think was the legislative purpose. The obvious purpose of clothing a guardian with the power to defend and to prosecute actions for his ward is to protect the guardian himself in respect of the property intrusted to his care and to see to it that no property is taken or imperiled without appropriate notice to him so that he may participate in the proceeding. We are of opinion, and so hold, that the judgment here involved was voidable only. The guardian was given every opportunity to protect his trust and his ward's property that the law intended he should have.

Order affirmed.

MR. JUSTICE STONE, because of illness, took no part in the consideration or decision of this case.

[1]Reported in 277 N. W. 913.