*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 4**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In re G.J.P.

OFFICE OF PUBLIC GUARDIAN,
*Petitioner,*

*v.*

The HONORABLE JUDGE JULIE LUND,
Third Judicial District Juvenile Court,
*Respondent.*

No. 20190733
Heard November 15, 2019
Filed February 5, 2020

On Petition for Extraordinary Relief

Third District, Salt Lake
The Honorable Judge Julie Lund
No. 1153247

Attorneys:

Sean D. Reyes, Att'y Gen., Stanford E. Purser, Deputy Solic. Gen.,
Amy Jackson Leach, Asst. Att'y Gen., Salt Lake City, for petitioner

Brent M. Johnson, Salt Lake City, for respondent

Thomas A. Luchs, Cottonwood Heights, for Mother, J.R.

Martha Pierce, Salt Lake City, Guardian ad Litem for G.J.P.

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1   The juvenile court appointed the Office of Public Guardian (OPG) as guardian ad litem for a mother (Mother) in a parental rights termination proceeding. OPG did not consent to the appointment and does not believe it is the appropriate entity to represent Mother. OPG filed this petition for extraordinary relief contending that the juvenile court lacks authority to appoint a guardian ad litem for an adult. OPG also contends that, even if the juvenile court has that ability, the court exceeded its discretion by appointing OPG. We grant the petition and afford OPG the relief it seeks. Although the juvenile court possesses the authority to appoint a guardian ad litem for an adult, the juvenile court strayed beyond the bounds of its discretion by appointing OPG in this matter.

## BACKGROUND

¶2   In August of 2017, Mother was admitted to the University of Utah Hospital inpatient psychiatric unit. While hospitalized, she gave birth to G.J.P. G.J.P. experienced problems breathing and eating and was placed in the neonatal intensive care unit. G.J.P. remained hospitalized for several months. After treatment at the University of Utah Hospital, Mother was committed to the Utah State Hospital.

¶3   Soon after the birth of G.J.P., and with Mother still in the psychiatric unit, the Division of Child and Family Services (DCFS) began to inquire what it needed to do to ensure G.J.P.'s well-being. DCFS met with Mother and G.J.P.'s alleged father, both of whom acknowledged, according to DCFS, that they were unable to care for the child. DCFS also attempted to help Mother identify appropriate family to care for G.J.P., but these efforts, along with DCFS's independent search for family members, did not identify anyone who could raise G.J.P.

¶4   DCFS moved for temporary custody of G.J.P., and the court granted prehearing custody to DCFS. DCFS also filed a stipulated motion to appoint a guardian for Mother. The motion noted Mother's diagnosis and civil commitment and informed the court that Mother's counsel did not believe that Mother understood what was happening in the termination proceedings. During hearings on DCFS's motion, the juvenile court questioned whether it had jurisdiction to appoint a guardian for Mother.

¶5   Meanwhile, the parties tried, without success, to contact Mother's sister who may have previously served as Mother's

guardian. Eventually the juvenile court granted custody to DCFS, and DCFS placed G.J.P. with foster parents.

¶6   The juvenile court also concluded that it needed to determine if it could order reunification services or if Mother's illness rendered her incapable of taking part in those efforts. Accordingly, the court ordered Mother to participate in two psychological evaluations. Following the evaluations, Mother's counsel again moved to appoint a guardian for Mother, noting that her illness "renders [Mother] mentally incompetent to assist in her own defense and communicate meaningfully with counsel." The State did not object. The court found Mother incompetent, granted the motion, and appointed "a public guardian for [Mother]."

¶7   A month and a half later, the juvenile court issued an order explaining the multiple avenues it had explored to find someone to serve as Mother's guardian. The court reported that the Utah Office of Guardian Ad Litem could not represent Mother because its representation of G.J.P. created a conflict. The court also recited that it could find no relative or friend willing or able to serve. And the court noted that it was unaware of any other mechanism it could employ to identify and appoint an attorney to act as guardian ad litem for Mother. But the juvenile court noted that, under its reading of the Utah Code, OPG could petition or agree to represent Mother and directed that a representative of OPG appear at the next hearing "so that the powers of its office may be further discussed."

¶8   In response to the juvenile court's directive, OPG argued that it was not a proper entity to represent Mother because OPG's statutorily defined role is narrow and does not generally include advising or representing individuals in litigation.[1] OPG also argued

---

[1] The Office of Public Guardian is a statutorily created entity. *See* UTAH CODE §§ 62A-14-101 to -111. Section 105, entitled, "Powers and duties of the office," allows OPG to, among other things, "serve as a guardian, conservator, or both for a ward upon appointment by a court when no other person is able and willing to do so and the office petitioned for or agreed in advance to the appointment." *Id.* § 62A-14-105(1)(a)(ii). OPG generally only serves in the last instant when no one else can. Section 75-5-311(3) creates a prioritized list of who can serve as guardian—the Legislature places OPG as the very last option right after "any competent person or suitable institution." *Id.* § 75-5-311(3)(i). Even then, the Legislature has invested OPG with the ability to decide when it will serve as a

(continued ...)

that the juvenile court was not authorized to find a parent "sufficiently incompetent to appoint a guardian for purposes of assistance in litigation." OPG therefore "declin[ed] to file a petition on behalf of [Mother]."

¶9  Mother's counsel replied and claimed that OPG was not being asked to advise or represent Mother but to serve as guardian ad litem and "make decisions on her behalf which are in her best interest."

¶10  The juvenile court held a hearing where OPG reiterated its concerns. Despite those concerns, the juvenile court ordered OPG to "represent" Mother.

¶11  OPG moved to set aside the juvenile court's order, arguing again that the juvenile court lacked jurisdiction to appoint a guardian for an adult. The court denied the motion reasoning "[t]here is no person available to serve as a guardian for her" and "[t]he Office of the Public Guardian can provide a person to serve as a guardian for [Mother]."

¶12 OPG filed an interlocutory appeal of the order of appointment, and the termination proceeding was stayed. The court of appeals certified the appeal to this court. Upon its arrival at this court, we dismissed the petition because a non-party may not file an interlocutory appeal, but we did so with leave to refile as a petition for extraordinary relief. OPG then petitioned for relief. The court of appeals certified the petition to this court.

## STANDARD OF REVIEW

¶13  A person may petition for extraordinary relief on any of the specified grounds under rule 65B of the Utah Rules of Civil Procedure only when "no other plain, speedy and adequate remedy is available." UTAH R. CIV. P. 65B(a). "This court has broad discretion to grant or deny extraordinary relief." *Gilbert v. Maughan*, 2016 UT 31, ¶ 14, 379 P.3d 1263. In deciding whether to grant a petition we may consider the "egregiousness of the alleged error, the significance of the legal issue presented by the petition, the severity

---

guardian. Section 62A-14-110 instructs that a court cannot appoint OPG without its consent. *Id.* § 62A-14-110(1) ("The office may not be appointed as the guardian or conservator of a person unless the office petitioned for or agreed in advance to the appointment.").

of the consequences occasioned by the alleged error," or any other relevant consideration. *State v. Barrett*, 2005 UT 88, ¶ 24, 127 P.3d 682.

¶14 Whether the juvenile court has authority to appoint a guardian ad litem presents a question of law. We review questions of law for correctness. *See State v. Moreno*, 2009 UT 15, ¶ 7, 203 P.3d 1000. And we review the juvenile court's decision to appoint a specific guardian ad litem for an abuse of discretion. *See Hanson v. La Flamme*, 761 F. App'x 685, 689 (9th Cir. 2019) (applying an abuse of discretion standard to review trial court's decision of who would serve as guardian ad litem); *Gardner by Gardner v. Parson*, 874 F.2d 131, 139 (3d Cir. 1989) (same).

## ANALYSIS

¶15 Before we address the questions OPG presents, we need to highlight an issue that raises serious concerns meriting further exploration. No one has directly challenged whether the appointment of a guardian ad litem in these circumstances violates Mother's due process rights.[2] But the guardian ad litem representing G.J.P. raised important questions about this issue.

¶16 Citing federal case law, the guardian ad litem argued that Mother would be entitled to a hearing if the purpose of the guardian was to override Mother's legal decisions. We understand the concern. The juvenile court's order was somewhat vague on the proposed role the guardian ad litem would play, and that left room for G.J.P.'s guardian ad litem to legitimately worry that the court had authorized the proposed guardian ad litem to make Mother's decisions for her. In addition, Mother's counsel made repeated references in briefing and oral arguments to the proposed guardian ad litem making decisions for Mother. *See supra* ¶ 9. Although these concerns lurked amidst the arguments—as did a concern that not appointing someone to assist Mother would also violate her due process rights—OPG's petition does not ask us to address these due process questions.

¶17 We can see the substantial and important questions that may be implicated by the juvenile court's decision to appoint a guardian ad litem, but they are difficult to address in the abstract.

---

[2] Similarly, the question of whether the juvenile court correctly determined whether Mother needs a guardian ad litem is not before this court.

The calculus could change if the juvenile court envisioned a guardian ad litem who would "sit next to [M]other and answer her questions," as OPG asserts the juvenile court explained at one point, instead of a guardian ad litem expected to, as Mother's counsel asserted, make Mother's decisions for her. The power of a guardian ad litem, depending on how the role is defined, may have significant effects on an incompetent person's rights and the due process that should be afforded before a court infringes those rights.

¶18 Courts have recognized that "[t]here is something fundamental in the matter of a litigant being able to use his personal judgment and intelligence in connection with a lawsuit affecting him, and in not having a guardian's judgment and intelligence substituted relative to the litigation affecting the alleged incompetent." *Graham v. Graham*, 240 P.2d 564, 566 (Wash. 1952). Indeed, the Fifth Circuit has held that declaring someone incompetent and appointing a guardian ad litem implicates a "protected liberty interest" and the due process requirements of the Fifth Amendment. *Thomas v. Humfield*, 916 F.2d 1032, 1033 (5th Cir. 1990) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). "The appointment of a *guardian ad litem* deprives the litigant of the right to control the litigation and subjects him to possible stigmatization." *Id.* at 1034 (italics in original). Furthermore, "[t]he interposition of a guardian ad litem could very well substitute his judgment, inclinations and intelligence for an alleged incompetent's," and "the retention of legal counsel or the employment of a different attorney could be determined solely by the guardian ad litem . . . ." *Graham*, 240 P.2d at 566.

¶19 We also note that Utah Rule of Civil Procedure 17(b) instructs that a "guardian ad litem may be appointed in any case when it is deemed by the court in which the action or proceeding is prosecuted expedient to represent the minor, insane or incompetent person in the action or proceeding . . . ." Our rules authorize courts to appoint a guardian ad litem but provide no guidance as to the role that the guardian ad litem can or will play in the litigation.

¶20 Moreover, rule 17(b) delineates no safeguards a court should employ before appointing a guardian ad litem for an allegedly insane or incompetent person. Because these issues are not before us in this petition, we are not in a position to opine on the due

process to which Mother may be entitled should the juvenile court seek to appoint a different guardian ad litem on remand.[3]

¶21 Additionally, before we reach the merits of OPG's contentions, because of some confusion in the juvenile court's order and some cross-talk in the briefing, we believe it helpful to clarify what we talk about when we talk about a guardian. Specifically, it is helpful to distinguish between a "guardian" and a "guardian ad litem."

¶22 A general guardian for an incapacitated individual[4] has broad power over the person and her rights and affairs. Unless otherwise limited by the court, a general guardian "has the same powers, rights, and duties respecting the ward that a parent has respecting the parent's unemancipated minor child." UTAH CODE § 75-5-312(2). This generally includes having custody of the ward, establishing the ward's place of abode, even if outside of the state, receiving the ward's money and property for the ward's support, and consenting to any professional care. *Id.* § 75-5-312(3). Statutory processes govern this action. *See, e.g., id.* ch. 75-5 & 75-5b. For example, when someone petitions the court for a finding that an adult is incapacitated and in need of a guardian, the court must hold a hearing, and the allegedly incapacitated person has a right to be present, have counsel, present evidence, cross-examine witnesses, and have a trial by jury. *Id.* § 75-5-303. In statute, there are also guidelines for who can serve as a guardian, *id.* § 75-5-311, requirements for notice, *id.* § 75-5-309, actions for emergency appointment, *id.* § 75-5-310, and other detailed procedures. *See id.* §§ 75-5-301 to -317.

¶23 In contrast, the role a guardian ad litem may play is much less defined. According to those who purport to know such things, *Ad litem* is Latin for "to suit." *Ad litem*, BLACK'S LAW DICTIONARY

---

[3] In addition to flagging the issue for remand, we ask our standing committees on the rules of civil and juvenile procedure to examine the issue and suggest ways to address the question.

[4] "Incapacity" is defined in Utah statute. UTAH CODE § 75-1-201(22). The statutes governing the court appointment of a guardian for an adult require a finding of incapacity. *Id.* § 75-5-303. The juvenile court in this case stated that it found Mother to be "an incompetent person," and not an incapacitated person within the meaning of section 201.

(11th ed. 2019) (defining *ad litem* as "for the purposes of the suit"); *Ad Litem*, MERRIAM-WEBSTER DICTIONARY ONLINE, www.merriam-webster.com/dictionary/ad%20litem (defining *ad litem* as "for the lawsuit or action"); *Guardian ad litem*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining *guardian ad litem as* "[a] guardian, usu[ally] a lawyer, appointed by the court *to appear in a lawsuit* on behalf of an incompetent or minor party" (emphasis added)). In other words, a guardian ad litem is appointed for a specific matter before the court.

¶24 Utah's statutes governing the appointment of a "guardian" do not, by their express terms, apply to the appointment of a guardian ad litem.[5] And Utah Rule of Civil Procedure 17(b) allows a guardian ad litem to be appointed even when there is already a general guardian over the person. However, beyond this understanding, the role of guardian ad litem for an incompetent adult is largely unspecified in Utah law.

¶25 The role of a guardian ad litem for *a minor* is principally defined in statute. *See* UTAH CODE § 78A-2-701 to -705. Whereas, the role a guardian ad litem for an incapacitated adult is addressed only in stray references throughout the code. Utah Code section 75-3-203(4), for example, provides that a guardian ad litem is prohibited from nominating someone to serve as a personal representative under the Probate Code. And section 75-1-403 provides that a court can appoint a guardian ad litem to represent the interest of, and approve an agreement on behalf of, an incapacitated person in estate proceedings. *See id.* § 75-1-403(4).

¶26 OPG contends that the juvenile court did not specify in its order whether it was appointing OPG as a general guardian or a guardian ad litem. True enough. But it is reasonable to conclude, from the context and statements the court made, that it appointed OPG as a guardian ad litem to assist Mother in this case. The juvenile court found "there is no procedure available to the Court to act as Guardian ad Litem," and "there is no other person willing or able to act as Guardian ad Litem." Moreover, the juvenile court noted that

---

[5] The Probate Code provides that "'[g]uardian' means a person who has qualified as a guardian of a minor or incapacitated person pursuant to testamentary or court appointment, or by written instrument . . . , but excludes one who is merely a guardian ad litem." UTAH CODE § 75-1-201(20).

OPG may "agree to represent [Mother] *in this action*." (Emphasis added). Thus, we are confident that the juvenile court envisioned appointing OPG to represent Mother in the termination case only. And our analysis proceeds from the conclusion that we are examining the appointment of a guardian ad litem and not a general guardian.

## I. OPG Can Seek Extraordinary Relief Because It Lacks a Plain, Speedy, and Adequate Remedy to Address Its Appointment

¶27  Under rule 65B of the Utah Rules of Civil Procedure, "where no other plain, speedy and adequate remedy is available," *id.* 65B(a), a person may petition for relief from a court's wrongful use of judicial authority, *id.* 65B(d). The person petitioning on this ground for relief must be a "person aggrieved or whose interests are threatened by any of the acts" specified. *Id.* 65B(d)(1). Rule 65B(d) contemplates that a person may seek a petition "where an inferior court . . . has exceeded its jurisdiction or abused its discretion." *Id.* 65B(d)(2)(A).

¶28 OPG asserts both. OPG claims that the juvenile court exceeded its jurisdiction by appointing any guardian ad litem for an adult and that it went beyond the bounds of its discretion by appointing OPG specifically. OPG has no plain, speedy, and adequate remedy because it is not a party to the action below. Indeed, OPG attempted to appeal its appointment, but this court dismissed that appeal because OPG was not a party to the action. *Supra* ¶ 12; *see Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19, ¶ 46 & n.7, 110 P.3d 678 (noting that nonparties may not appeal lower court orders and that extraordinary writ would be the proper vehicle to challenge such order), *overruled on other grounds by Madsen v. JPMorgan Chase Bank, N.A.*, 2012 UT 51, ¶ 5, 296 P.3d 671. Additionally, this petition could not first be brought to the district court because the juvenile court "is of equal status with the district courts of the state." *See* UTAH CODE § 78A-6-102(3). Thus, a petition for an extraordinary relief constitutes the proper vehicle for OPG to advance its arguments.

## II. The Juvenile Court has Inherent Authority to Appoint a Guardian Ad Litem

¶29 OPG first asserts that because juvenile courts are courts of limited jurisdiction created by statute, they do not have authority to appoint a guardian ad litem for a parent in a matter before the court. We disagree.

¶30 All courts have a responsibility to ensure the fair and just proceeding of matters before them. This includes the requirement that the court protect the rights of incompetent parties that come before it. 53 AM. JUR. 2d *Mentally Impaired Persons* § 174 (2019). Court proceedings can exercise the ultimate power of the government to interfere with rights and freedoms inherent in the individuals that enter the courtroom doors. If a person is not "competent, understandingly and intelligently, to comprehend the significance of legal proceedings," *Graham v. Graham*, 240 P.2d 564, 565 (Wash. 1952), her most fundamental rights could be gravely affected.

¶31 Courts are tasked with adjudicating vital disputes, like considering whether a parent should be stripped of the right to raise her child, and are duly obligated to ensure the parties affected are competent to be involved in the process. Indeed, we have codified this important principle in our Rules of Civil Procedure. Rule 17(b) states that "an insane or incompetent person who is a party must appear either by a general guardian or by a guardian ad litem appointed in the particular case by the court in which the action is pending."

¶32 OPG nevertheless asserts that a juvenile court, exercising its duly granted jurisdiction to hear a case, cannot protect an incompetent party by appointing her a guardian ad litem. This ignores the long-standing principle, recognized by our sister states and federal courts, that the authority to appoint a guardian ad litem is inherent in the court's exercise of its proper subject matter jurisdiction.

¶33 For example, in *Graham*, a mother petitioned the Washington Supreme Court to prohibit the trial court from appointing a guardian ad litem for her in a child visitation dispute. 240 P.2d at 565. Much like the present case, the trial court in *Graham* had called a psychiatrist to testify about the mother's mental health in regards to the underlying matter but, after that testimony, "felt compelled to protect the interests of [the mother] by appointing a guardian ad litem for her." *Id.* The mother's counsel objected. *Id.* The Washington Supreme Court had to decide, it noted, whether the trial court acted "within and not in excess of" its jurisdiction. *Id.* That court then reasoned that "the principle is well established" for courts to appoint guardian ad litem when needed, "[i]rrespective of specific statutory authorization." *Id.* Such a party may not "comprehend the significance of legal proceedings and the effect [and] relationship of such proceedings in terms of [his or her] best interests." *Id.* Thus, the

power to appoint a guardian ad litem is "part of and incidental to" the court's jurisdiction over the underlying case. *Id.*

¶34 In *Guardianship of H.L.*, the Vermont Supreme Court concluded that "the appointment of a guardian ad litem is a power inherent in courts in dealing with those appearing before them who are under disability." 460 A.2d 478, 479 (Vt. 1983). The court reasoned that the trial court had to be able to fulfill its duty to see that the interests of an incompetent person were fully protected, especially when fundamental rights were involved. *Id.* Similar to the case here, that case involved the right of a parent to the custody of her child. *Id.* That court noted these rights as basic rights and held that when the incompetent's counsel raised the issue to the court, it was "incumbent upon the court to insure that [mother's] interests were protected," and that the court therefore erred in not investigating further or appointing a guardian ad litem. *Id.* at 480.

¶35 In the same fashion, the Colorado Supreme Court held that a juvenile court had power to appoint a guardian ad litem for an adult even in a wider scope of cases than relevant statutes contemplated. *See People in Interest of M.M.*, 726 P.2d 1108, 1118–20 (Colo. 1986). That court held that it was "well established" and "proper" for a court to appoint a guardian ad litem for an incompetent party. *Id.* at 1118. The court further reasoned that this principle was well supported by the court's rule of procedure requiring the protection of incompetent persons and appointment of guardian ad litem in some circumstances. *Id.* at 1119.

¶36 These courts are not outliers. The principle is well established across the country. *See, e.g.*, *Zaro v. Strauss*, 167 F.2d 218, 220 (5th Cir. 1948) ("Even in the absence of an inquisition of insanity or of a commitment, where a person is incompetent courts generally have inherent power to protect the interests of the incompetent by appointing a guardian ad litem to represent the incompetent in proceedings."); *Estate of Leonard, ex rel., Palmer v. Swift*, 656 N.W.2d 132, 139 (Iowa 2003) ("In addition to [the rules of civil procedure], the court has the inherent power to do whatever is essential to the performance of its constitutional functions, . . . including the appointment of a guardian ad litem." (citation omitted)); *In re Interest of A.M.K.*, 420 N.W.2d 718, 719 (Neb. 1988) (reviewing a parental rights termination proceeding from juvenile division and holding that "[e]very court has inherent power to appoint a guardian ad litem to represent an incapacitated person in that court"); *Buckingham v. Alden*, 53 N.E.2d 101, 104 (Mass. 1944) ("[T]he authority to appoint a guardian ad litem or next friend is not limited

to the foregoing statutory provisions. Such power is inherent in the court and its exercise at times becomes necessary for the proper functioning of the court."); *Schultz v. Oldenburg*, 277 N.W. 918, 922 (Minn. 1938) ("[T]his power of the district courts to [appoint a guardian ad litem] is not taken away by the statutes authorizing the probate courts to appoint general guardians for insane persons." (citation omitted)); *Wilson v. Ball*, 523 S.E.2d 804, 806 (S.C. Ct. App. 1999) ("[T]he authority for a circuit court to appoint a guardian ad litem is inherent in the court itself . . . ."); *In re Serafin*, 649 N.E.2d 972, 976 (Ill. App. Ct. 1995) ("The circuit court is charged with a duty to protect the interests of its ward and has, by statute and otherwise, those powers necessary to appoint a guardian *ad litem* to represent the interests of the respondent during the court's exercise of its jurisdiction." (italics in original)); *Berman v. Grossman*, 260 N.Y.S.2d 736, 738 (N.Y. App. Div. 1965) ("The power to appoint a guardian ad litem to appear for and represent the incompetent in the proceeding, absent prohibitory legislation, is among the court's inherent powers in the matter of supervision over the person and property of the incompetent."); 53 AM. JUR. 2d *Mentally Impaired Persons* § 174 ("A court has the inherent power to appoint a guardian ad litem to represent an incompetent person in that court.").

¶37 After reviewing this case law, we similarly agree that a court, even a statutorily-created juvenile court, may appoint a guardian ad litem for an incompetent adult in a matter properly before the court. This power is inherent in the court's jurisdiction independent of a specific statutory grant of authority.

¶38 OPG raises several arguments attempting to keep us from this conclusion. First, OPG argues that the juvenile court does not have inherent power because it is a legislatively created court of limited jurisdiction. For this proposition, OPG cites to *Western Water, LLC v. Olds*, 2008 UT 18, 184 P.3d 578, and its discussion of *State ex rel. B.B.*, 2004 UT 39, 94 P.3d 252.

¶39 In *Western Water*, we allowed a district court to award costs even when it lacked subject matter jurisdiction over the underlying matter because, we said, the district court has inherent power over its processes, including attorneys. *See* 2008 UT 18, ¶ 42. In contrast, in *State ex rel. B.B.* we did not allow a juvenile court to award costs because it did not have jurisdiction over the underlying matter. *See* 2004 UT 39, ¶ 20. We distinguished *State ex rel. B.B.* because juvenile courts, unlike district courts, are courts of limited jurisdiction. *W. Water*, 2008 UT 18, ¶¶ 46–47. OPG points to the intersection of

these holdings and argues that juvenile courts are limited to those powers enshrined in statute.

¶40  OPG's argument misses the mark. The jurisdiction at issue in *State ex rel. B.B.* was the juvenile court's subject matter jurisdiction. We reasoned that the juvenile court could not award costs because it did not have subject matter jurisdiction over the underlying dispute. *State ex rel. B.B.*, 2004 UT 39, ¶ 19; *see also W. Water*, 2008 UT 18, ¶ 46. In other words, the juvenile court did not have "inherent" power to do something in aid of a case over which it lacked subject matter jurisdiction. In contrast, here there is no question that the juvenile court has subject matter jurisdiction over a parental rights termination proceeding. *See* UTAH CODE § 78A-6-103(1). And, as described above, we join the throng of other states that have concluded that a court has inherent power to appoint a guardian ad litem to aid the progress of a case within its subject matter jurisdiction.

¶41  Second, OPG notes that the Juvenile Court Act specifically spells out that juvenile courts have "exclusive original jurisdiction in proceedings concerning . . . appointment of a guardian of the person or other guardian of a minor who comes within the court's jurisdiction . . . ." *Id.* § 78A-6-103(1)(d). OPG asserts that a ruling that juvenile courts have inherent authority to appoint a guardian ad litem would render this statute superfluous. We disagree. This statute simply excepts other courts from having original jurisdiction to name guardians for minors who are under the juvenile court's proper jurisdiction. There is no indication in the statute that the Legislature intended this statement of the juvenile court's original jurisdiction to strip the juvenile court of its inherent authority to appoint a guardian ad litem for an incompetent adult in a matter properly before it.

¶42  Third, OPG points to the Utah Probate Code, which outlines the procedures for appointing a guardian, and asserts that those provisions deny the juvenile court the jurisdiction to appoint a guardian for an adult. Specifically, OPG asserts that the Probate Code provides the sole basis for appointing a guardian for an incapacitated adult.

¶43  OPG argues that Utah Code section 75-5b-202 states that a "court of this state has jurisdiction to appoint a guardian" if certain requirements are met, and that the phrase "court of this state" does not encompass juvenile courts. OPG correctly asserts that the Probate Code defines "court" as those courts "having jurisdiction in matters relating to the affairs of decedents." *Id.* § 75-1-201(8). Because

the juvenile court does not have jurisdiction over the affairs of decedents, it is not, reasons OPG, a court within the meaning of the Probate Code. Thus, OPG argues that because section 75-5b-201 states that these statutes are the exclusive jurisdictional basis for appointing a guardian, the juvenile court could not have jurisdiction to appoint OPG in this case.

¶44 This argument fails however, because when the Probate Code speaks of guardians, it refers to general guardians and not guardians ad litem; as noted, the definitions that apply to the Probate Code define "guardian" but specifically exclude a "guardian ad litem" from that definition. *See id.* § 75-1-201(20). OPG nevertheless contends that this definition of guardian applies only generally throughout the Probate Code and that there is another, more specific definition of guardian in the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (UAGPPJA). *Id.* §§ 75-5b-101, *et seq.* There, guardian is defined as "a person appointed by the court to make decisions *regarding the person* of an adult, including a person appointed under Title 75, Chapter 5, Part 3, Guardians of Incapacitated Persons." *Id.* § 75-5b-102(4) (emphasis added). Because this definition does not contain the carve out for guardians ad litem found in the general definition, OPG believes that UAGPPJA's requirements for appointing an adult guardian, including vesting the district court with exclusive jurisdiction for that appointment, applies to guardians ad litem for an adult as well. *See id.* § 75-5b-201.

¶45 Although OPG is correct that UAGPPJA's definition of guardian does not contain the general definition's exclusion of guardians ad litem, we are not convinced that this evinces a legislative intent that UAGPPJA govern the appointment of guardians ad litem for an adult. This is because UAGPPJA applies to a guardian appointed "to make decisions regarding the person of an adult." *Id.* § 75-5b-102(4). This hearkens back to the term of art "guardian of the person," which is sometimes employed to describe a guardian "responsible for caring for someone who is incapable of caring for himself or herself because of infancy, incapacity, or disability." *Guardian of the person*, BLACK'S LAW DICTIONARY (11th ed. 2019); *accord Home Town Fin. Corp. v. Frank*, 368 P.2d 72, 75 (Utah 1962) (referring to "guardian of his person" as one who "look[s] after his personal affairs"). It also echoes language that we use to talk about a general guardian who has "general care and control of the ward's person and estate." *General guardian*, BLACK'S LAW DICTIONARY (11th ed. 2019).

¶46 Moreover, UAGPPJA is based upon the uniform act. The commentary to the act states that the uniform legislation "would not ordinarily apply to a guardian ad litem." NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS, UNIFORM ADULT GUARDIANSHIP AND PROTECTIVE PROCEEDINGS JURISDICTION ACT 8 (2007). Our Legislature adopted the uniform act's definition. Because of this, we have little trouble concluding that the Legislature did not intend UAGPPJA to divest juvenile courts of their inherent ability to appoint a guardian ad litem.

¶47 Finally, OPG argues that Utah Rule of Civil Procedure 17(b), which requires an incompetent person to appear by guardian or guardian ad litem, cannot increase a juvenile court's jurisdiction or run contrary to statute. We agree that this court could not, by rule, give the juvenile court subject matter jurisdiction over a category of disputes from which the Legislature had deliberately excluded it by statute. But, as discussed above, the appointment of a guardian ad litem is inherent in the court's jurisdiction to manage the cases over which it has proper subject matter jurisdiction and so does not increase the court's authority.

### III. The Juvenile Court Exceeded its Discretion by Appointing the Office of Public Guardian As Guardian Ad Litem

¶48 OPG next asserts that even if we conclude, as we have, that the juvenile court does have the authority to appoint a guardian ad litem for an adult, it was wrong to appoint OPG. OPG argues that it is an entity created in statute whose "powers and duties" are defined solely by statute, *see* UTAH CODE § 62A-14-103, and that the juvenile court's order contravenes these statutes.

¶49 The statute directs OPG to "serve as a guardian, conservator, or both for a ward upon appointment by a court when no other person is able and willing to do so and the office petitioned for or agreed in advance to the appointment." *Id.* § 62A-14-105(1)(a)(ii). "Guardian" here is defined by reference to the guardianship statutes that specifically exclude guardian ad litem. *See id.* § 62A-14-102(4). Thus, OPG argues, it would be expressly outside its enabling statutes to serve as a guardian ad litem.

¶50 The Legislature also decreed that OPG must have "petitioned for or agreed in advance to the appointment" before a court can draft it into service. *Id.* § 62A-14-105(1)(a)(ii). That did not occur here. OPG reiterates that the juvenile court "cannot compel OPG to do more than what it is authorized to do by statute."

¶51 We take OPG's point. The Legislature appears to have created OPG for a very specific purpose. And the Legislature empowered OPG to be the sole arbiter of when it will serve. Against this statutory backdrop, the juvenile court exceeded the bounds of its discretion in appointing OPG without its consent.

¶52 This does not mean, however, that the juvenile court has depleted its options. There appears to be nothing in statute that speaks to the qualifications to serve as a guardian ad litem for an adult. Certainly, the parties have not pointed us to anything that would limit who can serve. Our rules appear to be similarly bereft of requirements. Thus, the pool of people who could potentially be appointed as guardian ad litem in a case such as this is vast.

¶53 We can understand why the juvenile court looked to OPG when efforts to locate a family member or friend failed.[6] But it

---

[6] The juvenile court correctly noted that we have devised no formal process for the court to appoint an attorney to serve as guardian ad litem for an adult when more traditional candidates—like a family member or friend—cannot be found. But this lack of procedure does not warrant drawing OPG into the matter contrary to its statutory mandate.

And while we understand that the juvenile court may have perceived that it had exhausted its efforts to find someone to help Mother, we note the long tradition in our state of attorneys stepping up to serve in difficult situations when requested.

Rule 6.1 of the Utah Rules of Professional Conduct urges attorneys to participate in activities that serve the legal system and profession. Many attorneys have kept faith with that rule by agreeing to serve as pro bono counsel in Post-Conviction Remedies Act cases. Many of us have, at some point in our careers, received a call from a judge who, having seen potential merit in a Post-Conviction Remedies Act petition, is searching for a volunteer to represent the petitioner. We appreciate the many attorneys who have responded to those calls. Cases like this appear to be another way that attorneys could fulfill rule 6.1's mandate.

Because a guardian ad litem does not have to be an attorney, there may be other groups, such as social work clinics and mental health advocacy groups, who may be willing to help identify individuals willing to serve in difficult situations.

We appreciate that this is far from a perfect solution, and that we should not systemically rely on vague procedures and the good will

(continued ...)

strayed outside the boundaries of its discretion when it appointed OPG without its consent.

## CONCLUSION

¶54 The juvenile court has inherent authority to appoint a guardian ad litem for an incompetent party appearing before it in a matter over which it has subject matter jurisdiction. However, because it is contrary to OPG's statutorily granted role, the juvenile court exceeded its discretion by ordering OPG to serve as guardian ad litem. We grant the petition and remand for further proceedings.

———————

of our bar and community to ensure that our system treats people fairly. As our rules committees examine ways we might improve our rules with respect to the appointment of guardians ad litem for adults, we ask that they consider how the courts can better identify and appoint suitable guardians ad litem for incompetent adults.